CINCINNATI, N. O. & T. P. RY. CO. v. FARRA et al.

(Circuit Court of Appeals, Sixth Circuit. February 5, 1895.)

No. 208.

RAILROAD COMPANIES—ACCIDENTS AT CROSSINGS—CONTRIBUTORY NEGLIGENCE.
  The view of a railroad from a highway crossing it at grade was obstructed for 400 feet from the crossing, by cuts through which both passed, and by undergrowth on the railroad right of way, which prevented one driving on the highway from seeing to either side until his horse was on the track. A woman, acquainted with the crossing, and knowing that by the schedule of regular trains no train was due from the north, driving with two small children in a carriage having its side curtains rolled up, approached the crossing at a walk, listening for but hearing no signals or sound of any train, and, having no view of the track until she was upon it, was struck by a special train from the north moving at extraordinary speed. *Held*, under all the circumstances of the case, that it was not error to submit to the jury the question as to whether the plaintiff was guilty of contributory negligence in not stopping to look and listen before driving upon the track.

In Error to the Circuit Court of the United States for the District of Kentucky.

The defendant in error Mrs. Maggie Farra, while driving across the tracks of the defendant railroad, at a public road crossing, came into collision with a rapidly moving passenger train, passing on said railroad, and received very serious injuries. She instituted suit for damages in the circuit court of Jessamine county, Ky., which was removed by the plaintiff in error to the United States circuit court for the district of Kentucky. Mrs. Farra's petition alleged that the collision was due to the negligence of the railroad company in

failing to give proper signals when its train approached the public road crossing at which the injury was received, and in neglecting to keep its right of way free from obstructions impeding the view of travelers crossing the road. These allegations of negligence were controverted, and contributory negligence upon the part of Mrs. Farra was pleaded as a defense to her right of recovery. There was a jury, and verdict for $5,000 in favor of Mrs. Farra, and from the judgment thereon a writ of error was sued out by the plaintiff in error.

At the conclusion of the evidence offered by the plaintiff below, the defendant moved for instructions to the jury to return a verdict for the defendant. This was overruled and exception taken. At the conclusion of all the evidence this motion was renewed, and again overruled, and exception reserved.

The evidence disclosed by the record tended to establish the following facts bearing upon the alleged contributory negligence of the defendant in error: Mrs. Farra, on the afternoon of September 4, 1892, was returning from a visit to a neighbor's. She was driving along a country road which intersects the railroad of the plaintiff in error at a grade crossing. She was in a two-seated vehicle, and was driving a kind, gentle horse. She had two small children with her,—one a baby asleep upon her lap, the other a little girl seated next to her. All were on the back seat. Both the turnpike and the railroad approached the crossing through considerable cuts. Some 400 feet before reaching the crossing the turnpike begins a descent, which continues to the crossing. The grade of this turnpike appears to be about 12 feet to the 100 for the first 300 feet from the point where the descent began. The remainder of the road was upon a grade less than half so great. The railroad approaches the crossing from the north on a curve, through a deep cut, for perhaps 1,000 feet. The last point from which one traveling this turnpike could observe the railroad was 400 feet from the crossing, being the point at which the road began to descend the hill to the railroad. The railroad, from the beginning of the descent, was obstructed from the view of Mrs. Farra until within a few feet of the track. This was due to the effect of the cuts through which both the railroad and turnpike approached the crossing. To add to this obscurity, the right of way had been suffered to grow up in undergrowth and rank weeds, so that one driving could not see to the right or left until the horse pulling the barouche was over the first rail. The side curtains of the carriage were up, and there was no obstacle to prevent her seeing whatever could be seen from her vehicle. From the time she started down the hill she was attentive to the situation. Being acquainted with the turnpike, and aware of the dangerous character of the crossing, she was watchful and careful. She says in her evidence: "I was driving down the hill in a walk. My baby was asleep. The other little girl was on the other side of me. I was listening for the train. I knew it was a dangerous crossing. I had no view of the track until I got on the track." She says she then looked first to the south, because at that hour no train was expected from the north. Seeing no train in that direction, she then looked the other way, and saw an engine approaching, and so near that there was no time to cross over or to withdraw. The engineer on this engine says that on approaching the crossing "he saw a horse; the horse's mouth was open as though he was being pulled back"; and that he struck the horse before there was time to check up. Mrs. Farra says, though she approached the crossing in a walk and was listening, she heard no signals and did not hear the approach of the train. She was acquainted with the schedule of trains, and says no train was due from the north at that hour. The train which occasioned the catastrophe was a special passenger train from Cincinnati carrying several cars of excursionists en route to witness the Sullivan-Corbett fight. There was evidence tending to show that no signals were given on approaching this dangerous crossing, and that the train was moving at from 40 to 50 miles per hour.

The court refused the request made by the plaintiff in error for an instruction in these words: "The jury is instructed that a railroad track is of itself notice of danger and a warning to persons approaching a railroad crossing to look out for trains running on the railroad, and that it is the duty of a person approaching a railroad crossing to make a vigilant use of his senses in looking for a train approaching the crossing on the railroad, and to use care

commensurate with the ·character and apparent danger of the crossing in order to ascertain if a train is approaching a crossing on a railroad; and, if the view of the railroad is obscured by intervening objects, it is the duty of the traveler upon the highway, before going upon the railroad track, to stop and look and listen for an approaching train; and if such traveler, under such circumstances, fails to stop and look and listen, and without so doing goes upon the track and is injured by a train running on said railroad track, which injuries would not have been sustained except for the failure to stop and look and listen, then the jury must find for the defendant, even though the jury believes from the evidence that there was a failure by the employés operating the train to give notice by signals of the approaching train to the crossing."

The court, after charging the jury fully upon the alleged negligence of the railway company, gave the following instruction in respect to the contributory negligence of the defendant in error: "That was a public highway. She had the right to travel upon it and to cross this crossing, but she was under obligation,—in duty bound,—to the relative right which the company had of its right of way, to use care and prudence herself. She could not and cannot claim damage if she has herself been careless or imprudent in approaching and attempting to cross that right of way, and by that I mean such prudence and caution as reasonably careful persons would take under similar circumstances. Now, this crossing was, although in the country, dangerous, —dangerous because of the character of the public highway as well as the cut on the railroad, which highway is, as the evidence has it, rather a steep descent; somewhere between 7 and 8 feet descent, according to the evidence, to the 100 feet. The gentleman who testified said the last 100 feet before you came to the crossing is, I think he said, about 8 feet grade to the 100 feet. It was through a cut which was on a hillside, so that, according to the evidence, there is some contrariety. You, gentlemen, must consider that; it is not for the court. After they left the top there was no means of seeing an approaching train from this until very near the crossing. That was not because of the nature of the railway so much as the nature of the highway, but the two combined interfered with the vision, so that any one approaching it, after they had left the top of the hill,—according to the witnesses, some 100 or 150 yards from the top of the hill,—had no means of seeing an approaching train from around the curve until they were near the crossing. Now, the plaintiff owed that obligation not only to herself,—self-preservation would, of course, incline her to look and listen,—it was an obligation which she owed to the railroad company in the use of that crossing. The evidence is that she came down the hill slowly, in a walk, sitting in a buggy or a rockaway; that she had her children with her, one being with its head in her lap and the other by her side. The horse, according to the evidence, was gentle. She was listening and looking. She did not stop; that is to say, the horse, going in a walk, continued to go. She did not stop, but passed on, and by reason of that the collision occurred. Now, the query is just here, gentlemen, and it is for you to say, did she exercise such care and such prudence under the circumstances as a careful and prudent person should have done? If you believe she was guilty of contributory negligence, and that is a want of care and prudence which an ordinarily careful and prudent person should have taken under the circumstances, then, although the defendant may have failed to give the signal and may have been negligent itself, she cannot recover if the accident would not have occurred except for her own negligence. This law is universal in this class of cases, and the plaintiffs cannot recover for the negligence of another if they have been negligent when, except for that negligence, the injury would not have happened. So that, in considering this case, if you think that her driving down that hill, sitting on the back seat in the rockaway, as she was, or if you think her failure to stop and look and listen, was a want of care and prudence which an ordinarily careful and prudent person would have taken, and that that causes the accident, then you should find, in that event, for the defendant."

To this the court added: "Just on this subject the counsel for defendant have asked me to give instructions, and I give it in his language. I believe I have given them in substance, but I will give them in the language of the counsel who asked them: 'The court instructs the jury that, while it is the

duty of those in charge of a railway train approaching a highway crossing to give notice of the approach of the train to the crossing by the sounding of the whistle or the ringing of the engine bell, yet the neglect of the engineer of the locomotive of a railroad train to sound its whistle or ring its bell on approaching a highway crossing does not relieve a person traveling on a highway, approaching a railroad crossing, of the necessity of taking ordinary precautions for his safety. He is bound to use his senses, to look and listen, before attempting to cross the railroad track, in order to avoid any possible accident from an approaching train. And if he omits to use them, and goes upon the track, he is guilty of culpable negligence, and if he receives an injury he so far contributed to it as to deprive him of the right to recover for such injuries so inflicted or sustained.' This, gentlemen, is upon the idea of contributory negligence."

C. B. Simrall (Ira Julian, of counsel), for plaintiff in error.

J. R. Morton, G. R. Pryor, and John Welch, for defendants in error.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

LURTON, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

The only question arising upon the errors assigned is as to the contributory negligence of the defendant in error. Were the circumstances so clear, and the inference of law so plain, that the court should have instructed for the plaintiff in error? That the defendant in error did not stop for the purpose of looking and listening was an admitted fact. If the omission of that precaution was negligence per se, then the instruction asked for at the conclusion of the evidence should have been granted. To have given the instruction in the language of the request respecting the duty to stop if the view was obstructed would have been equivalent to an instruction for the plaintiff in error, for there was no dispute as to the fact that Mrs. Farra's view of the track was obscured from a point 400 feet back on the road until her horse was upon the track, and in danger from a passing train. The request to charge as to the duty of stopping was rested upon the single fact that the view was obstructed. The learned trial judge thought that there were circumstances in evidence entitled to consideration in the determination of that question which were eliminated by the form in which the request was made. The case of Railway Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, in most respects was like the one at bar. The decedent in that case was run over at a public street crossing. The view of the tracks to be crossed was obscured by houses and standing cars for several hundred feet before reaching the crossing. The contention of the railroad company was that when the deceased reached a point within 15 or 20 feet he had a clear view of the track to be crossed, and that it was his duty to have stopped there for the purpose of looking and listening, and the court was requested to so charge. This was declined, the court saying that "it is too much on the weight of the evidence, and confines the jury to the particular circumstance narrated, without notice of others that they may think proper." "This reason is a

sound one," said the supreme court when called upon to review the ruling of that trial judge. 144 U. S. 433, 12 Sup. Ct. 679.

The charge in that case was identical in substance with the one delivered by Judge Barr, and submitted to the jury the question as to whether, under all the circumstances, the conduct of the decedent had been that of a reasonably prudent and cautious man. "There is," said the supreme court in the case last cited, "no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care under all circumstances. * * * It is only where facts are such that all reasonable men must draw the same conclusion from them, that the question of negligence is even considered as one of law from the court." 144 U. S. 417, 12 Sup. Ct. 679. It is true that in the Ives Case it did appear that the deceased had stopped some 80 feet before reaching the track, "presumably to listen." But it was also shown that from that place he had no view of the railroad, and could not get a view until he was within 15 or 20 feet of the track. He did not, therefore, avail himself of an opportunity to stop and look and listen at the only place near the crossing, familiar to him, which was available for observation. But where was Mrs. Farra to stop? An observation made from the top of the hill, 400 feet before she reached the crossing, would have been of no practical value. The train approaching, according to the contention of defendant in error, was traveling at the rate of 50 miles per hour. When she passed the brow of the hill it must have been a mile or more away, and the view from that point to the north is not shown to have extended beyond the whistling post, some 1,200 or 1,300 feet north of the crossing. It is not shown that she knew the obstructed condition of the right of way by undergrowth and weeds. Non constat but that for the negligent condition of that right of way she might have had a view of the approaching train without being obliged to drive her horse onto the track before getting a view of the track; and that, in reliance upon the absence of such obstruction, she continued to drive until she found she had reached the track before getting a view. To stop before actually reaching the track, with a view of looking, would have been idle, as the facts turned out, unless she got out and walked nearer the track. But she was a woman, and incumbered with a sleeping babe and another small child. Such a course, to say the least, would have been very inconvenient and quite extraordinary. Of course, there may be circumstances when ordinary prudence would demand even so unusual a precaution. But in this case were there circumstances which made that course imperative? She knew the running schedule of the regular trains, and says that no train was due at that hour from the north. The train with which she did collide turns out to have been a special train, moving at extraordinary speed. There was therefore no special reason to apprehend a train from the north at that hour. But it is said that the noise of her own vehicle impeded her hearing, and that by stopping her sense of hearing would have been more acute. She

was traveling at a walk. The curtains of her barouche were rolled up. She was conscious of the dangerous character of the crossing she was approaching, and listening for a train. Under all the circumstances, was she guilty of negligence per se in not stopping before she reached the track to listen? Was the omission of that precaution so culpable, under all the surroundings, "that all reasonable men must draw the same conclusion"? or was the question one which admitted of such different judgments as to her conduct as to make it a proper question to go to a jury? Under all these circumstances, was it the duty of the court to say that the single fact that her view of the railroad was obstructed made it her duty to stop, or might the court say, as in effect it did, "look to all the circumstances surrounding this plaintiff at the time, and say whether her failure to stop was such an omission of that care and prudence which an ordinarily careful and prudent person should have exercised under like circumstances"?

The fundamental rule concerning the care to be exercised at a public railroad crossing by a traveler is that he must exercise that degree of caution usually exercised by prudent persons, conscious of the danger to which they are exposed at such crossings. If a crossing is peculiarly dangerous, a corresponding increase of caution is required. The general rule would, of course, demand that a vigilant use should be made of the eye in looking and of the ear in hearing. The failure to exercise these faculties by one approaching a crossing would be such a departure from the observance of that degree of caution exercised by prudent persons at such crossings as to raise, under ordinary circumstances, an inference of negligence, about which reasonable men would not disagree. Elliott v. Railway Co., 150 U. S. 245, 14 Sup. Ct. 85; Railroad Co. v. Houston, 95 U. S. 697; Schofield v. Railway Co., 114 U. S. 615, 5 Sup. Ct. 1125; Horn's Adm'x v. Railroad Co., 6 U. S. App. 381, 4 C. C. A. 346, and 54 Fed. 301; Blount v. Railroad, 9 C. C. A. 526, 61 Fed. 375.

We are not prepared to say that ordinarily it would not be the duty of one approaching a crossing to stop and look and listen, if the view of the crossing was obstructed and the sense of hearing was materially affected by the noise of the vehicle in which the person was traveling. The Pennsylvania rule, which seems to make it the duty to stop under all circumstances, regardless of obstructions to the view or obstacles to the hearing, has not met with general acceptance, and seems much calculated to condone carelessness and recklessness by railroad companies at public crossings, where the rights and duties of the public and of the company are reciprocal. Neither are we prepared to say that the duty of stopping is imperative in all cases where the track is obscured. There may be circumstances, as in the Ives Case and in the case at bar, where the duty is debatable and proper for the consideration of the jury. Mrs. Farra's case presented quite as many circumstances calculated to modify the duty of stopping as were presented in the Ives Case, and we think should be controlled by that case. Nothing decided by this court in the case of Horn's Adm'x

v. Railroad Co., cited above, conflicts in any way with the Ives Case, or the application of the Ives Case to the one now decided. It is true that the district judge who tried that case in the circuit court had charged that it was the duty of the deceased to have stopped and looked and listened. But the plaintiff had a verdict, and the writ of error was sued out by the railroad company. It could not and did not assign error upon that charge, and the propriety of the charge was not involved in the opinion of this court. The judgment must be affirmed.