## CINCINNATI ST. RY. CO. v. WHITCOMB.

(Circuit Court of Appeals, Sixth Circuit. March 4, 1895.)

No. 251.

1. PRACTICE—VARIANCE—OHIO STATUTE.
   Plaintiff, while driving his wagon along a street on which were the tracks of defendant's street railway, was struck by one of defendant's electric cars, his wagon crushed between the car and another wagon, and plaintiff injured. There was a conflict of evidence as to whether the injury was caused by the first collision, or by the backing away of the car after such collision, and as to whether or not there was a second collision after the first. Plaintiff's complaint alleged that the injury was caused by a second collision. Defendant's evidence tended to show, and the jury found, that the injury was caused by the backing of the car. *Held,* that under the statute of Ohio (Rev. St. Ohio, §§ 5294–5296) providing that no variance between the allegations in a pleading and the proof shall be deemed material, unless it has actually misled the adverse party to his prejudice, this variance was immaterial.

2. SAME—GENERAL AND SPECIAL VERDICTS—CONSISTENCY.
   The jury found generally for the plaintiff, and also specially that the injury to plaintiff's wagon was caused by the first collision, and the injury to plaintiff himself by the backing of the car; but they disagreed as to whether the motor was reversed for the purpose of backing the car before or after the collision. *Held,* that there was no inconsistency between the general verdict and the special findings and disagreements.

3. NEGLIGENCE—DEGREE OF CARE—CROSSING STREET-CAR TRACKS.
   It is not the law that persons crossing street-railway tracks in a city are obliged to stop, as well as look and listen, before crossing such tracks, unless there is some circumstance which would make that ordinarily prudent.

4. SAME—OPERATION OF ELECTRIC CAR.
   The standard of ordinary care is not absolute, but varies according to circumstances and the possible or probable danger from the use of the instrument; and in the case of a heavy electric car, operated at considerable speed in the streets of a city, it is not error to modify a request for instruction that the company, operating such car, is required to use ordinary care, by pointing out that a higher degree of caution is required in managing such car than in managing ordinary vehicles.

5. STREET RAILWAYS—RIGHT OF WAY IN STREETS.
   It is not error to refuse to charge a jury, specifically, that the cars of a street railway have a paramount right of way in the street, when the court has already charged that the tracks of the railway in themselves constitute a warning that a car may at any time approach, and that, when a vehicle is on the track, it is bound to get out of the way, and not obstruct the passage of the car.

In Error to the Circuit Court of the United States for the Western Division of the Southern District of Ohio.

This was an action by Charles K. Whitcomb against the Cincinnati Street-Railway Company to recover damages for a personal injury. In the circuit court plaintiff recovered judgment. Defendant brings error.

Charles K. Whitcomb, a citizen of the state of Kentucky, recovered a verdict and judgment against the Cincinnati Street-Railway Company, a citizen of Ohio, in the circuit court of the United States for the Western division of the Southern district of Ohio, as damages for a personal injury. This is a proceeding to review that judgment. Whitcomb was a garden truck huckster, and in his business used a horse and wagon. The Cincinnati Street-Railway Company is engaged in the maintenance and operation of an electric street-car line, running from Avondale, a suburb of Cincinnati, into that city, by way of Hunt street. Whitcomb, on the 3d of August, 1893, stopped in front of a saloon on the west side of Hunt street, and went in. There are two tracks upon Hunt street at this point, and the width of the street from curb to curb is 46 feet, leaving about 16 feet between the outer rail of each track and the curb. The car which afterwards collided with Whitcomb was running from Avondale south into the city of Cincinnati on the west track. To the north of where Whitcomb's wagon stood the track curved to the west. From the curb at this point it was possible to see up the track from 200 to 400 feet. The street car was running at the rate of 8 miles an hour. Some 60 feet south of where Whitcomb's wagon stopped, on the same side of the street, was a broken-down slop-feed wagon, extending diagonally from the curb towards the railway track. Whitcomb testified that, when he came out of the saloon, he looked north up the track, and saw no street car; that he then got on to his wagon, and, in order to avoid the malt wagon, drove towards the track; that, before he reached the track, he looked back again up the track. His wagon was covered, but the front side curtains were rolled up. The street car overtook Whitcomb when he was opposite the malt wagon, and between it and the track. Just where his left wheels were is made uncertain by the evidence, and whether the dashboard of the car struck the wagon, or the collision took place between the back wheels of the wagon and some of the side standards of the car after the dashboard of the car had passed the wagon, is not clear. Certain it is that the car crushed the huckster wagon against the heavy malt wagon without injuring Whitcomb, and that subsequently the car backed, and then moved forward again, and that, either in the backing or in the second forward movement, the wagon of Whitcomb was upturned, and he was injured. The evidence for the plaintiff supported his claim that his injury was caused by a second collision, while defendant adduced much testimony to show that there was no second collision, but that the upturning of the wagon and the injury to the plaintiff were caused by the backing alone. The motorman testified that Whitcomb turned suddenly across the track when the car was too near him to stop it; that, in order to facilitate the stopping, he not only put on the brake, but also reversed the motor; and that the backing of the car after the first collision was due to the reversal of the motor before the first collision. There was counter evidence tending to show that the motor was reversed after the collision, and that the backing was due to that reversal. The amended petition of plaintiff charged "that the said defendant, by its servants, agents, and employés, was guilty of gross and wanton negligence in the following respects: That it negligently failed to ring the bell or sound the gong on its said electric car, so as to warn plaintiff of the approach of the same, and negligently failed to stop said car after plaintiff's perilous position was known, and when, by the exercise of reasonable care on its part, the said collision might have been prevented. By reason of these acts, and without negligence on the part of plaintiff, his wagon was struck by the defendant's said electric car, so that plaintiff was thereby, and by reason thereof, placed in a perilous position. Plaintiff says that while in said perilous position, and without negligence on his part, and without time or opportunity to extricate himself from said perilous position, the defendant, through its servants, agents, and employés in charge of said electric car, was guilty of further and additional gross and wanton negligence in the following respects: That it did, with full knowledge on its part of plaintiff's perilous position, cause said electric car to be backed a short distance, and then caused

said car with great *force* and violence to be collided with the said horse and wagon of the said plaintiff, by reason of which last-named collision plaintiff was greatly damaged in his person, etc. And plaintiff further says that by reason of defendant's said negligence, through its servants, agents, and employés in charge of the running and operation of said electric car as aforesaid, his horse, drawing his said wagon, was killed, and his wagon broken and demolished, by reason of all which the plaintiff has been damaged in the sum of five thousand dollars."

The jury returned a general verdict for the plaintiff, and also answered certain questions of fact put to them by the court, and failed to answer other questions as follows: "First. Was the injury to the plaintiff and his wagon and his horse caused by the collision when the car first struck the wagon, or by the backing of the car after it struck the wagon? Answer: The injury to the horse and the wagon was due to the first collision, and the injury to the plaintiff was due to the backing out of the car. Second. If you find that the injury was caused by the backing of the car after it struck the wagon, you will please answer each of the following questions: (1) Was the motor reversed before the car struck the wagon? Answer: Disagree. (2) Was the motor reversed after the car struck the wagon, and did that reversal cause the backing? Answer: Disagree. (3) If not, what was the cause of the backing? Answer: Disagree. Third. After the backing of the car, did it, when again moved forward, strike plaintiff, his horse or wagon? If so, did that striking cause the injury complained of? Answer: No." A motion was made on the part of the defendant for a special finding non obstante veredicto. This was overruled, and judgment entered for the plaintiff on the general verdict.

Kittredge, Wilby & Simmons and Paxton, Warrington & Boutet, for plaintiff in error.

W. H. Jackson and Simmons & Simmons, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

TAFT, Circuit Judge (after stating the facts). The general verdict of the jury was evidently based on the finding that the injury to the plaintiff's person was caused by the negligent backing of the car after the first collision, and not by a second collision. It is argued that this is such a variance from the charge of negligence in the petition that judgment should have been entered for the defendant. The petition charged that the backing was negligent, and that the moving forward to the second collision was negligent, but ascribed the injury to the second collision. The evidence of the plaintiff tended to show that the injury was due to the second collision. The evidence of the defendant, however, tended to show that the injury was due to the backing alone.

Section 5294 of the Revised Statutes of Ohio provides that:

"No variance between the allegation in a pleading, and the proof, shall be deemed material, unless it has actually misled the adverse party to his prejudice, in maintaining his action or defense upon the merits, and when it is alleged that a party has been so misled, that fact must be proved to the satisfaction of the court, and it must also be shown in what respect he has been misled; and thereupon the court may order the pleading to be amended upon such terms as are just."

Section 5295 provides:

"When the variance is not material, the court may direct the fact to be found according to the evidence, and may order an immediate amendment, without costs."

Section 5296 provides:

"When the allegation of the claim or defense, to which the proof is directed, is unproved not in some particular or particulars only, but in its general scope and meaning, it shall not be deemed a case of variance within the last two sections, but a failure of proof."

In Hoffman v. Gordon, 15 Ohio St. 211, the petition charged defendant with flooding the plaintiff's cellar by obstructing the street, and the answer denied the charge.    On the trial, evidence admitted without objection showed that the flooding was occasioned by defendant's wrongful opening of the sidewalk, making a channel through which the water was forced into the cellar by obstructions placed in the street by others.    It was held not to be error for the court, although no amendment of the petition was asked or made, to find upon this evidence for the plaintiff, and to render judgment accordingly.    Such proceeding was held by the court to be in conformity with the sections of the Ohio Code above quoted. Said the court, Judge Welch pronouncing the opinion:

"The evident object of the Code is to vest in the court a discretion, where it can be done without surprise or injury, to try the case upon the evidence, outside of the pleadings; and, if objection be made, to allow the pleadings to be conformed to the evidence, at once and without terms.    When a trial is so had, without objection, we are only carrying out the spirit of the Code, by refusing to reverse the proceedings on account of the variance.    Had this evidence been objected to when offered, it is quite apparent that the plaintiff would have asked and obtained unconditional leave to amend.    To allow the defendant, after he has suffered the evidence to go to the jury without objection, to reverse the judgment on that account, · would be manifestly unjust to the other party."

In the present case the plaintiff asked the court to be allowed to make an amendment to the petition to conform to the theory of the case by which the injury was caused by the negligent backing. This was objected to by the defendant, and the motion was denied, on the ground that it was unnecessary.    We think the ruling of the trial court that the variance was immaterial was correct.    Certainly, the defendant could not be surprised by the evidence that the injury to the plaintiff was occasioned by the backing of the car, because that evidence was introduced on its behalf, and the application of the plaintiff was only to amend his pleadings to accord with the evidence brought out by defendant.    The case was tried on the theory that either in the first collision, in the backing, or in a second collision, there was negligence, causing the injury complained of; and a verdict on either ground might have been properly sustained, without surprise or prejudice to defendant.

Secondly, it is said that the judgment for the plaintiff cannot be supported because the findings and disagreements of the jury are inconsistent with the general verdict.    The jury found that the injury was caused by the backing of the car.    They disagreed as to whether the reversal of the motor, which caused the backing, occurred before or after the first collision; but they necessarily agreed that, whether the reversal of the motor occurred before or after the collision, the backing of the car was the result of the motorman's negligence.    There was evidence tending to show that,

even if the reversal took place before the collision, the backing could have been avoided by due care of the motorman after the collision. The motorman was asked by counsel for the plaintiff:

"Q. Now, when the car started back, the motor having been reversed, what effort, if any, did you make to stop that car? A. In going back? Q. Yes. A. Well, I saw I was releasing the man, and was not doing him any harm, and I let the car go back then. Q. About how far? A. Well, between four and six feet."

This tended to show that, whether the reversal of the motor occurred before or after the first collision, the subsequent backing of the car was voluntary on the part of the motorman, and might have been stopped by him. As the jury found that the reversing was the cause of the injury to Whitcomb, and that it was negligent, a finding by the jury as to when it took place with reference to the first collision was immaterial, and a disagreement as to such a fact could not affect the validity of the verdict. This covers all the assignments of error except those which are based on the charge of the court.

The exceptions to the charge of the court are very voluminous, very long, and many of them are quite frivolous. Generally, the exceptions to the charge may be comprehended under three heads: First, the court was asked to charge the jury that it was the absolute duty of Whitcomb not only to look and listen for the coming of the car, but also to stop, look, and listen. It certainly is not the law that persons crossing street-railway tracks in a city in a vehicle are obliged to stop before crossing, unless there is some circumstance which would make that ordinarily prudent. We have already held in the cases of Railroad Co. v. Farra, 66 Fed. 496, and McGhee v. White, Id. 592, that it is not the absolute duty, as matter of law, for one crossing a steam-railway track to stop, look, and listen, but that the necessity for stopping is to be determined by the circumstances, and is usually a question to be left to the jury, and so the court below in this case treated it. The rule cannot be stricter in respect to crossing a street railway than in crossing a steam railroad. The cases relied upon are chiefly Pennsylvania cases. In that state the supreme court has adopted a rule of law requiring every person to stop, look, and listen before crossing the railroad track. This rule is not followed in other states, and certainly is not the law in the federal courts.

The second general objection to the charge of the court is that it declined to give an instruction that the street railway had the paramount right of way in the street. The court below seems to have considered that the word "paramount" was likely to mislead members of the jury, and to give them the impression that the railroad company had the exclusive right to the street between the tracks. The court did say to the jury this:

"The electric street-car tracks of the street railway company along Hunt street, along which plaintiff was driving, were in and of themselves a warning to Whitcomb that a car might at any time approach upon the track towards which or upon which he was driving. Gentlemen, I said to you this morning that the street-railway company had the right to use the streets; that the plaintiff had the right to use the streets. None of

them had an exclusive right, but there is this one qualification with reference to street cars passing along the street as provided for in the ordinances of the city, which are in evidence. Wherever a wagon or other vehicle is on the track in advance of a car, it is bound to get out of the way, and not to obstruct the passage of the car."

This is a correct exposition of the relative rights of the street-railway companies and the rest of the public who use the street. If this is all that the word "paramount" means, then the court, in effect, charged the jury that the street-railway company had the paramount right to use the space between its tracks upon the street. If "paramount" means more than this, the charge requested should not have been given. We cannot therefore see that the defendant was prejudiced by the action of the court upon this charge.

Finally, it is objected that the court imposed upon the railway company a higher degree of care than the law justifies in avoiding collisions with vehicles upon its track. The court was requested to give the following instruction:

"While it is the duty of the company to exercise ordinary care and diligence to avoid collision and other accidents, the rule does not dispense with care and prudence on the part of persons who use the street in common with the company. * * * I do not give this instruction exactly in the form in which it is asked, but I do give it substantially. It is not merely ordinary care that this street-railway company should exercise. In the movement of an electric car or of a horse car on the streets more care is required than in driving a wagon, because it is a larger vehicle and moves more rapidly. It is of greater weight and momentum, and it cannot be stopped so easily. When it comes to moving an electric car, which weighs, according to the testimony, about eight tons, and is impelled by a motor of sixty horse power,—thirty times the power applied to an ordinary horse car, and moving it more rapidly, with its greater weight and momentum (the testimony in this case is that a car, when in full speed, can be stopped in about three lengths of the car; that is, about ninety feet),—all these circumstances increase correspondingly the requirements as to the management of the car. It is the duty of the company to exercise proper care, for the reasons that I have given."

We think this charge correctly stated the law. The court was evidently attempting to avoid giving the impression to the jury that a company operating a machine of the great force and power of an electric car upon a street upon which other vehicles might lawfully travel was not required to use any more care in this operation than the driver of an ordinary wagon or the driver of an ordinary street car. He, therefore, very properly called the attention of the jury to the distinction between the requirements in the one case and in the other. It is true, speaking strictly and technically, that one is only required to use the care in the manipulation of any machine with reference to the rights of others which the ordinarily prudent man would use. But the standard of ordinary care is not absolute; it varies according to the circumstances, and according to the possible or probable danger which may arise from the use of the instrument. The court did not tell the jury that the street-railway company was obliged to use the highest degree of care, but only a proper degree of care, considering the possibility of danger from the instrument it was operating. This, we think, is quite in accordance with the ruling of the supreme court in the

case of Railway Co. v. McDaniels, 107 U. S. 454, 2 Sup. Ct. 932, where it was held that the charge to the jury that the railway company, in the selection of its night telegraph operators, was under a duty to its other employés to exercise proper and great care to select competent persons for that branch of the service, was a correct statement of the law to the jury, because of the very delicate and responsible duties which telegraph operators were obliged to discharge. So here. Accidents from electric street railways are numerous. A speed of 10 miles an hour in a traveled street, with a car weighing from six to eight tons, and having such momentum that it cannot be stopped short of 90 feet when running at full speed, certainly imposes upon those who choose to operate it the duty of great care to avoid collisions with persons who are lawfully upon a street; and while it is true that such care, owing to the circumstances, would be but ordinary care, the expression "ordinary care" is one which might give the jury a wrong impression in such a case, and the court properly exercised its discretion to couch its language in a form legally equivalent and less likely to mislead.

Finally, exception was taken to that part of the charge where the court told the jury that even though the plaintiff were negligent, if the defendant, having observed the negligence, might have avoided its effect by due care, the defendant was liable. This charge was not only good law, but was especially applicable to the circumstances of this case, because there was much evidence tending to show that the injury to plaintiff's person occurred through the negligence of the motorman of the defendant after the first collision had taken place, from an unnecessary and ill-advised backing of the car when the plaintiff was in a helpless position, but still remained uninjured. The principle has been several times announced in this court. Mississippi Valley Co. v. Howe, 6 U. S. App. 172, 3 C. C. A. 121, and 52 Fed. 362; Louisville & N. R. Co. v. East Tennessee, V. & G. R. R., 9 C. C. A. 314, 60 Fed. 993; Coasting Co. v. Tolson, 139 U. S. 551, 11 Sup. Ct. 653; Railroad Co. v. Kassen, 49 Ohio St. 230, 31 N. E. 282.

Finally, it is objected that the court admitted evidence to show that it was the custom in Cincinnati for wagons to keep to the right on a traveled street. This was introduced upon the issue made by the defendant that the plaintiff, when he reached the wrecked malt wagon, should have crossed the track to the left side of the street, instead of driving on to and along the tracks and around the malt wagon, keeping all the while on the right side. The custom was not a very material circumstance, but it was not improperly introduced, for it showed a reasonable motive in the plaintiff not to cross clear over because he would be obliged to come back in order to observe the custom to keep upon the right-hand side of the street as he drove. The court left it to the jury to say whether, under all the circumstances, it was Whitcomb's duty to cross the track to the other side of the street, and simply allowed the introduction of evidence as to custom to suggest a reason (the weight of which was left to the jury) for his wishing to remain

on the right side of the street, if he could otherwise and without negligence do so. Certainly, its introduction was not a reversible error.

On the whole case, we find no error, and we affirm the judgment, with costs.