### SHATTO v. ERIE R. CO

(Circuit Court of Appeals, Sixth Circuit. March 18, 1903.)

#### No. 1,136.

1 RAILROADS—CROSSINGS—INJURIES—SPEED ORDINANCE—VIOLATION—SIGNALS.
   Where a railroad company ran its train over a city street crossing which was much used at a higher rate of speed than was permitted by a city ordinance, and without giving any warning signals, by reason of which plaintiff was injured while going over the crossing, such facts constituted a sufficient showing of negligence on the part of the railroad company to justify a submission of such issue to the jury.

2. SAME—CONTRIBUTORY NEGLIGENCE.
   Plaintiff approached a railroad crossing in a city, with which he was familiar, at about 4:30 in the afternoon. The wind was blowing strongly from the south, and his view of approaching trains from the north was obstructed by a freight train standing on a switch track nearest him and by high board fences, dwelling houses, piles of lumber, etc. Plaintiff had his ears covered, and, as he approached the crossing, looked and listened, and, hearing no train, continued driving his horse at a trot until within 100 feet of the track, when the horse began prancing or single-footing. Plaintiff drove between the cars of the freight train, which had been cut at the crossing, and when his horse got his head beyond the cars he swerved and jumped to the left, when plaintiff was struck by a train approaching from the north on the main track. Held, that plaintiff's failure to stop before driving on the track under such circumstances was contributory negligence as a matter of law.

In Error to the Circuit Court of the United States for the Northern District of Ohio.

W. S. Anderson and Murray & Koonce, for plaintiff in error.

C. D. Hine and John H. Clarke, for defendant in error.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

DAY, Circuit Judge. This case was brought to recover for personal injuries sustained by the plaintiff as the result of a collision between one of the engines attached to a train of the defendant company and the vehicle in which the plaintiff was attempting to cross the track. Upon hearing the testimony for the plaintiff, the trial judge

directed a verdict in favor of the company upon the ground of the contributory negligence of the plaintiff at the time of the collision. This proceeding brings into review the correctness of that instruction.

It may be conceded at the outset that there was testimony sufficient to make a case to be submitted to a jury as to the negligence of the company in running its train at the time at a higher rate of speed than was permitted by the ordinance of the city of Sharon, Pa., within the limits of which city the accident happened, and that there was a failure on the part of the company to give the warning signals required by the exigencies of the situation in approaching the crossing of a much used street. We may, therefore, consider the case upon the theory that the negligence of the company was sufficiently proven, and turn our attention to the question of contributory negligence.

The railroad runs north and south, or nearly so, through a part of the city and across a number of streets, one of which, known as "Ohio Street," crosses the track of the defendant company at an angle, the street running approximately east and west. At a distance about 1,700 feet north of the crossing the passenger station is situated. Crossing Ohio street the defendant company has two tracks. Thirty feet to the west of the main track is the track of one of the divisions of the Lake Shore & Michigan Southern Railroad Company. At a distance of 7 feet and 8 inches east of the east rail of the defendant's main track there was a side track crossing Ohio street parallel with the defendant's main track. This side track extended above and below Ohio street for a considerable distance. On this siding, at the time of the accident, there was standing a train of freight cars, the train having been cut in two so as to permit a space for the passage of people and vehicles of from 9 to 12 feet in width. The view from Ohio street to the east of the crossing up the track to the north was obstructed by high board fences, dwelling houses, piles of lumber, a lumber mill, and the standing cars. At the time of the accident, for a distance of at least 225 feet east of the crossing on Ohio street, no view could be had of a train approaching the crossing from the north. Under these conditions a person approaching from the east on Ohio street could not, because of the freight cars and other obstructions, see up the track to the north until within two feet of the main track. On February 18, 1900, the plaintiff, accompanied by his brother-in-law, started to drive from his home to the west side of the city. In so doing, he drove along Ohio street, approaching this crossing from the east. Ohio street is a much-traveled street, and a common thoroughfare for the people of the city. It was in the afternoon, about 4:30 o'clock. The ground was covered with snow, and the wind was blowing strongly from the south. The plaintiff and his companion were riding in a phaeton with the curtains down, the former driving, and occupying the right-hand seat. The plaintiff's testimony tended to show that at a point from 200 to 225 feet east of the crossing he and his companion moved to the front of the seat, one looking north, and the other south, and listening for a train; that at a point about 90 feet east of the crossing he looked out around the buggy top, but could see nothing to the north because of the cars on the siding

above; that about 25 feet back from the track they looked and listened again, and heard nothing; that he started to drive through the opening between the cars; when his horse got his head beyond the cars, he swerved, and jumped to the left at an angle down the track; that the horse gave a second jump, and jerked the buggy off the ground, then into the middle of the track. The plaintiff testifies that his horse was going three or three and a half miles an hour just before he went past the freight cars. It appears that the plaintiff did not stop. He testifies that he and his companion were looking and listening from a point about 250 feet east of the crossing, and heard no train. The day was cold, and the plaintiff had on "ear tabs." The plaintiff was familiar with this crossing. Until within about 100 feet of the track, the horse was driven at a trot; after that, he was "prancing" or "single-footing." At a distance of 30 or 40 feet from the crossing, the horse pricked up his ears as though he heard something coming from behind. The plaintiff looked back, but saw nothing.

The principles which govern the determination of questions of contributory negligence in cases like the one at bar are well settled. The law requires of one approaching a railway crossing the exercise of his faculties of sight and hearing to avoid injury. While the standard is the care of ordinarily prudent persons under the same or similar circumstances, such care requires that in approaching a situation so dangerous as a railway crossing a person shall at least look and listen at such short distance from the crossing as to enable him to pass in safety. In some jurisdictions it is held that in all cases the traveler approaching the crossing must stop, look, and listen. This court has not gone so far as to require stopping in all cases. Under the peculiar circumstances of the case in Cincinnati, N. O. & T. P. Ry. Co. v. Farra, 13 C. C. A. 602, 66 Fed. 496, this court held that it was not contributory negligence, as a matter of law, for Mrs. Farra to drive upon the crossing without stopping. In that case, Judge Lurton, delivering the opinion of the court, said:

"We are not prepared to say that, ordinarily, it would not be the duty of one approaching the crossing to stop and look and listen, if the view of the crossing was obstructed, and the sense of hearing materially affected by the noise of the vehicle in which the person was driving. The Pennsylvania rule, which seems to make it the duty to stop under all circumstances, regardless of obstructions to the view or obstacles to the hearing, has not met with general acceptance, and seems calculated to condone carelessness and recklessness by railroad companies at public crossings, where the rights and duties of the public and the company are reciprocal. Neither are we prepared to say that the duty of stopping is imperative in all cases where the track is obscured."

Where the view of the track is obscured so that one's vision can be of no service in enabling him to know of the approach of a train, and the traveler is required to rely upon his sense of hearing only, it must be an exceptional case which excuses one from stopping and listening before going into the danger which may be impending without other warning than he can get from his sense of hearing. A person, under such circumstances, may not rely implicitly upon the railroad company giving proper signals before approaching the cross-

ing, but must make use of his own faculties for self-protection. Elliott, in his work on Railroads (section 1167), states the rule as follows:

"While it cannot be justly affirmed, as we believe, as a matter of law, that there is a duty to stop in all cases, yet there are cases where the failure to stop must be deemed such a breach of duty as will defeat a recovery by the plaintiff. There are very many cases holding that the surroundings may be such as to impose upon the traveler the duty of stopping, looking, and listening, and these cases, as we think, assert the true doctrine. Some of the courts, in well-reasoned cases, press the rule further, and hold that the traveler must in all cases stop, look, and listen. As we have said, we do not think it can be justly affirmed as matter of law that there is a duty to stop in all cases, but we do think that the duty exists in cases where there is an obstruction to sight or hearing, and that, where the surroundings are such that but one conclusion can be reasonably drawn, and that conclusion is that it is negligence to proceed without halting, the court should without hesitation direct a verdict if no halt is made. In the majority of cases, however, the question is one of fact, rather than of law."

And in a note to the same section the author says:

"There is, however, substantial agreement upon the proposition that, when a reasonably effective observation cannot be made without stopping, then the traveler must stop and look and listen."

Subject to qualification under very peculiar circumstances, such as those in the Farra Case, where a woman incumbered by children was driving towards the crossing obscured more than usually by weeds and undergrowth, of which she is not shown to have had previous knowledge, negligently suffered to grow on the company's right of way, we think the rule stated by this author is the correct one. It may be added that the question of contributory negligence becomes one of law only when fair-minded men from the established or conceded facts would draw the conclusion of a want of ordinary care. Where opposing inferences may be drawn, the question of negligence, under proper instructions, must be submitted to the jury.

Applying these general principles to the case made out, did the court err in instructing the jury to return a verdict for the defendant? The plaintiff was familiar with the crossing. He knew that it had the two tracks—the siding and the main track just beyond. He knew that he could not see a train coming from the north because of the intervening obstructions. He saw the cars standing with an opening through which he might drive. Once through the opening by a horse's length, and he was practically upon the main track with no probable means of escape from death or injury. He could see nothing, and a strong wind from the south was blowing up the track, and carrying the sound of any train approaching from the north away from him. Under such circumstances he was bound to use the only sense which could help him to avoid danger with the more vigilance. He did not stop. He did not even slow his horse to a walk. He was riding in a curtained carriage, with "tabs" on his ears for protection against the cold. It seems to us that these are circumstances which call for the traveler to stop and listen with unimpeded hearing for an approaching train. In not doing so, and in driving upon the track in the manner stated, with his ears muffled, we think there was contributory negligence as a matter of law. It is argued that it would

have done no good to stop and listen. We cannot agree to this supposition; certainly not to the extent of exonerating the plaintiff from using the precautions obviously necessary for his protection, because they could not have changed the result. We think it only reasonable to suppose that, had he stopped and listened with open ears before going between the open cars, he must have heard the noise of the approaching train. Had he halted for a moment before going between the cars, the train would have passed in safety. Upon general principles we think the court did not err in giving a peremptory instruction for the defendant because of the contributory negligence of the plaintiff under the circumstances shown. While there are some resemblances, yet there are important differences between the facts of this case and that of Cowen, Receiver, v. Grabow (decided at this term) 120 Fed. 258. The obstructions to a view of the track were in such case much the same. But Shatto was seated in a phaeton, with the curtain down. Grabow was standing up in an open wagon. Shatto and his companions did not stop, though they looked to the right and left when about 90 feet from the crossing, and again when about 25 feet. Although there was a strong wind blowing from the direction from which the train came, and a view of the track was so obstructed as that he could not see to the north, and he was compelled to depend upon his hearing, he did not stop to better hear, and did not remove his "ear tabs," which were necessarily an obstacle to listening to advantage. Grabow, though without "ear tabs," did in fact stop and listen, when a few feet from the track. The Grabow Case presents somewhat exceptional facts. This conclusion renders it unnecessary to consider the correctness of what the court said in taking the case from the jury as to the application of the so-called Pennsylvania rule of "stop, look and listen" in the federal courts when the accident happens in that state.

Judgment affirmed.

Note. This case was decided and opinion prepared while Judge DAY was a member of this court.