ERIE R. CO. v. SCHULTZ.

(Circuit Court of Appeals, Sixth Circuit. November 16, 1909.)

No. 1,922.

1. TRIAL (§ 143*)—QUESTIONS FOR JURY—CONFLICTING EVIDENCE.

Where the question whether the watchman at a railroad crossing lowered the gates while a certain train was passing might have had a bearing on a case on trial, and the watchman's testimony was contradictory, the question was one for the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 342, 343; Dec. Dig. § 143.*]

2. RAILROADS (§ 328*)—ACCIDENTS AT CROSSING—CONTRIBUTORY NEGLIGENCE.

Plaintiff was driving with a load of lumber over the tracks at a street crossing of defendant's railroad, when the wagon was struck by a passing engine and he was injured. There were six tracks, and on the outside track, which was the second from that on which he was struck, cars

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rop'r Indexes

were standing, which obstructed the view. There were gates at the crossing in charge of a watchman, which were up when plaintiff drove in; but whether they were closed when a train passed, just prior to that, or whether, if not, plaintiff observed the fact, was left uncertain by the evidence. Plaintiff was familiar with the crossing and knew it was dangerous. *Held*, that it was his duty to stop and listen before driving on the through track, where he was struck, if his view was so obstructed that he could not see, and that in failing to do so, and in driving on the track without exercising any care whatever to ascertain whether a train or engine was approaching, he was guilty of contributory negligence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1057–1070; Dec. Dig. § 328.*]

In Error to the Circuit Court of the United States for the Northern District of Ohio.

Action by August F. Schultz, guardian of John Balke, against the Erie Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed.

I. T. Siddall, for plaintiff in error.

R. B. Newcomb, for defendant in error.

Before LURTON, SEVERENS, and WARRINGTON, Circuit Judges.

SEVERENS, Circuit Judge. The defendant in error brought this action as guardian for John Balke, who is alleged to be insane, against the Erie Railroad Company, to recover damages for an injury to his ward, resulting from the negligence of that company in failing to close its gates at a street crossing in the city of Cleveland, or otherwise give him warning of an approaching engine when he was attempting to cross its tracks. The case was tried before a jury, and there was a verdict and judgment for the plaintiff.

The circumstances of the case appear to be these: The tracks of the company at the place where the accident and injury happened run approximately east and west. The street called Broadway, on which Balke was traveling, runs nearly north and south, slightly diagonally. There were gates on the north and on the south sides of the tracks, of which there were six in number, which were raised and lowered by a watchman in a tower near by, in order to prevent persons using the street from coming upon the tracks while trains or locomotives without trains were passing or about to pass over the crossing. About midday of November 5, 1906, Balke, a fairly intelligent man, about 55 years of age, familiar with the locality, was driving a two-horse wagon heavily loaded with lumber, coming from the south and proceeding across the tracks to the north. Shortly before he got to the railroad, a freight train passed through going east. The gates were up when Balke came to the track. A string of freight cars was standing at his right on the south track, which was used as a dead or storage track. He passed over that track, and over the one north of it, on which the freight train passed east, and was going over the next one, which was the main line for west-bound trains, when his wagon was struck in the rear wheel by an engine backing down from the

east. Balke, who was sitting on the load, with his legs hanging over to the east, was thrown over his load to the ground, falling upon his back, and receiving a severe injury at the back of his head. It was several months before he got about, and ever since the accident he has given indications of physical impairment, and also of serious mental disturbance, on account of which the plaintiff was appointed his guardian.

It is not questioned that the gates were standing up, and that no warning was given Balke as he came upon the railroad. The negligence of the company is beyond doubt. The matters of controversy relate to the question of contributory negligence on the part of Balke. It seems clear from the record that he drove upon the tracks, and that he continued to advance, absorbed in meditation, until his horses were almost up to the track on which the engine 'was coming from the east, if they were not already upon it, when he was aroused to his peril by the shout of a man near by coming from the north. He then looked first one way and then the other, lashed his horses with his whip, and got partly over. It is urged in his exoneration that he had a right to assume that the way was clear from the fact that the gates were up, and that his view to the east was obstructed by the cars standing on the storage or dead track.

Before we take up the question which we shall mainly consider, it is necessary to state some further facts. The watchman who operated the gates from the tower testified that while the freight train was passing east he took a bucket and went down the ladder for some coal, and when he was part way up the ladder, returning, he became alarmed, and going up quickly saw Balke's peril, and called out to him to stop, which Balke did not do, because, as the witness thought, he did not hear him. His testimony as to whether he put down the gates for the freight train was conflicting. At one time his testimony indicated that it was improbable, if not impossible, that he put them down. . At another he affirmed the contrary. It was his duty to have put the gates down, and his testimony that he did so was self-serving. It was a question for the jury to determine what was the right inference to be drawn. The court construed all of his testimony upon that point to mean that he put the gates down for the freight train and lifted them afterwards. But, as we have said, it was a question for the jury to settle.

Upon this subject counsel for the defendant below requested the court to instruct the jury as follows:

"(4) If you find from the evidence introduced in this case that just before the accident a train passed on the tracks, and that the gates were not lowered while such train passed, and that this occurred in the presence of Balke, then he would have noticed that the gates were not being operated, and would have no right to rely upon them; and if his view of the track as he approached it was so obscured by cars standing upon the side track that his vision could be of no service in enabling him to know of the approach of a train, then it was his duty to listen for the train, and, if necessary, because of the noise of his wagon or the noise of the train which had just passed, then he should have stopped to listen before driving upon the crossing; and if you find that he would not have been injured, but for his failure so to do under such circumstances, then plaintiff cannot recover, and your verdict should be for the defendant.

"(5) If Balke knew that the gates were not lowered for a train that passed on the east-bound track, then it became his duty to use all reasonable precautions for his own safety, in light of the fact that they were not in use; and such care required that he shall look for an approaching train or engine, and, if he could have seen the engine in time to have avoided the collision, had he looked, he was himself negligent, which would preclude him or his guardian from recovery."

If the facts were as assumed in these requests, particularly the fifth, it would take away the ground for the assumption by Balke that the way was clear because the gates were up; for he would have known that they were not being operated, and therefore that he must look out for himself. The situation was practically the same as if there were no gates there. And in that case his heedlessness was so gross, when he should have been alert and watchful, that the imputation of negligence would be unavoidable. The place was one of grave danger. Trains and engines running light were frequently passing to and fro. He had a heavy load, which could not be quickly moved out of the way. True, there was a string of cars standing on the dead track, which for a time would obscure his view to the east. Whether he could have seen the engine in time to have stopped after passing that obstruction soon enough to have avoided the danger is in fair doubt. It seems from the record probable, but not certain, that he could. If he could not, it was his duty to stop and listen. But he took no care whatever. His conduct was the same as if there had been no railroad crossing there. Apparently he assumed that, the gates being up, he had no need to watch. That it is incumbent on one crossing a railroad, who cannot, on account of obstructions, look along the track, to stop, if necessary, to listen, has been often held.

In the case of Shatto v. Erie Railroad Co., 121 Fed. 678, 59 C. C. A. 1, where a string of cars prevented Shatto from looking along the track of a railroad crossing a city street, Judge Day, delivering the opinion of this court, said:

"Once through the opening by a horse's length, and he was practically upon the main track, with no probable means of escape from death or injury. He could see nothing, and a strong wind from the south was blowing up the track, and carrying the sound of any approaching train from the north away from him. Under such circumstances, he was bound to use the only sense which could help him to avoid danger with the more vigilance."

Judge Thayer used similar language in delivering the opinion of the Circuit Court of Appeals for the Eighth Circuit in Chicago, etc., R. R. Co. v. Pounds, 82 Fed. 217, 27 C. C. A. 112, where he said:

"A railroad track is in itself a warning of danger, because trains may be expected at any moment. Therefore the courts have repeatedly declared that a person is as a matter of law guilty of contributory negligence, if he drives upon a crossing without making a vigilant use of his senses of sight and hearing. If either of these senses is impaired, or for any reason cannot be exercised to advantage, he ought to be the more vigilant in the use of the other."

In Chicago & N. W. Ry. Co. v. Andrews, 130 Fed. 65, 72, 64 C. C. A. 399, several other cases are cited where the same rule was applied to like conditions. And in the case of McCann v. Chicago, M. & St. P. Ry. Co., 105 Fed. 480, 44 C. C. A. 566, it was said by the

Court of Appeals for the Seventh Circuit of the negligence of the plaintiff in such circumstances that:

"If he could not hear, he was under all the more obligation to use the senses he had."

There can be no doubt that it is the generally accepted rule of decision. Exceptional circumstances may exist in which it may be less strict, as in the case of C., N. O. & T. P. R. Co. v. Farra, 66 Fed. 496, 13 C. C. A. 602, where a woman was driving down through a deep cut upon a railroad with two small children, one of them in her lap, in a carriage, at a time when she knew no regular trains were passing, and was struck and injured by a special train moving 40 or 50 miles an hour. She could not see the train until she got down to within a few feet of the track. She had not stopped, but she was attentive to the situation, and had been listening to hear any passing train, and her horse was walking. We sustained a judgment for the plaintiff; but we recognized the general rule, Judge Lurton, who delivered the opinion, saying:

"The general rule would, of course, demand that a vigilant use should be made of the eye in looking and of the ear in hearing. The failure to exercise these faculties by one approaching a crossing would be such a departure from the observance of that degree of caution exercised by prudent persons at such crossings, as to raise, under ordinary circumstances, an inference of negligence, about which reasonable men would not disagree."

Thus far we have considered the case upon the assumption that there was evidence from which the jury might have found that the gates had not been put down for the freight train going east, and that Balke knew this; and upon that state of facts, we have held that he was not entitled to recover. The learned judge assumed the facts to be otherwise, and charged the jury as if the facts were established according to his understanding. He said:

"What was the conduct of Balke, under all the circumstances and conditions that surrounded him as he was crossing those tracks? The open gates were an invitation to him of safety. As I said a moment ago, that does not mean that he must not use his faculties to discover whether there is danger or not; but it does mean that he is in a different position, that his mind is less charged with a sense of danger, than occurs when a person approaches a railroad crossing at which there are not gates and a gateman."

Upon the question whether the court should have instructed the jury that the plaintiff was not entitled to recover because of his own negligence, a majority of the court are of opinion that the judge would not have been justified in taking that course. This view is induced largely by the fact that the record does not show with sufficient clearness whether Balke could have seen the approaching engine for a sufficient time after he had passed the obstruction and got a view to the east to have enabled him to stop before he drove upon the track. As upon a new trial the situation may be more definitely shown, we forbear further discussion of this aspect of the case.

The judgment must be reversed, and a new trial awarded.