### GRAND TRUNK RY. CO. OF CANADA v. BAIRD.

(Circuit Court of Appeals, Second Circuit. March 1, 1899.)

#### No. 16.

INJURY TO EMPLOYE—CONTRIBUTORY NEGLIGENCE.

Plaintiff had been for years foreman of track repairs on the tracks in the yards of the defendant railroad company, and was familiar with the course of business in switching in the yards. He knew that when an engine of the defendant went westward beyond a certain point on a certain track it must return on another track. He knew that an engine had gone upon the first-named track, and must shortly return upon the other. He glanced at the switches, and thought he saw that the track was closed, and walked between the tracks, and turned to cross on the return track, when he was struck by the engine. He did not look, on the assumption that the engine was not coming, because he had heard no signal of its approach. *Held*, that he was guilty of contributory negligence.

In Error to the Circuit Court of the United States for the Northern District of New York.

The defendant in error, hereinafter called the "plaintiff," brought an action at law, subsequently removed to the United States circuit court for the North-

ern district of New York, against the Grand Trunk Railway Company of Canada, hereinafter called the "defendant," to obtain damages for an injury alleged to have been suffered by its negligence. A verdict for $14,500 was rendered for the plaintiff, upon which judgment was entered, and this writ of error was brought to review the judgment.

George F. Brownell, for plaintiff in error.
George Raines, for defendant in error.

Before LACOMBE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. The injury occurred about half past 11 o'clock in the forenoon of May 4, 1892, upon a clear day, at the railroad yards of the New York Central Railroad Company, at Suspension Bridge, N. Y. The plaintiff was then about 36 years old, began railroad work in December, 1875, had been continuously in the employment of the New York Central Company, with the exception of a year and four months, and was a foreman of track repairs upon its tracks at Suspension Bridge, from May 8, 1890, until the accident. The main tracks of the New York Central are south of the Suspension Bridge station. Tracks Nos. 1 and 2 are north of the station, and extend thence easterly to the New York Central freight yard. Track No. 3 is a stub track, ending at the northerly end of the station. These three tracks run westerly, converge at a point where there are two switches, about 600 feet west of the station, known in the case as "A," and become one track which continues westerly towards the Suspension Bridge. Tracks 1 and 2 are used by the defendant for carrying its freight and passengers into Canada. No. 3 is used by the New York Central road generally. Loaded freight cars destined for the Grand Trunk road are placed in the freight yard east of the station, are brought down by the switching engines of that road, and usually placed upon No. 1, and the train, when made up, is hauled upon that track beyond the switches to the defendant's Suspension Bridge connections. The engine returns, is switched at A to No. 2, comes back to a point east of the station, and a switch is turned to enable it to pass upon No. 1 again. When the switching engine is about to return from the bridge, the switchman opens the switch at A to permit it to pass as a matter of course, and without previous notice, upon No. 2, or, if the switchman is not at that point, a signal of two whistles is given from the engine to recall him. This yard and these tracks are constantly being used for switching purposes, and the plaintiff was familiar with the course of business, and knew, when he saw a switching engine going westward on track No. 1 beyond the switches, that it would soon return on track No. 2. On the morning in question the conductor of engine 449 found among his freight in the New York Central yards two cars for the Erie road. They were placed next the engine, and the train was pulled to the depot, and stopped on track No. 1. The two Erie cars were cut out, sent down on track No. 1, and delivered to the Erie yard by engine 449. The engine came back as usual to the switch, was switched to No. 2, and continued upon that track until the accident happened, 193 feet east of the switch points. The switch was opened by the switch tender

from his own knowledge of the necessity for doing so, and without a call by whistle.

The plaintiff testifies that he saw engine 449 when it pulled the train. from the freight yard upon track No. 1, that it was cut off, moved away from the train, and was at the switch, A, and was moving westward beyond the switch. He thought that no cars were attached to it. He was, at that time, overseeing the unloading of some ties at a point on the main tracks about 60 feet south of the Diamond crossing, which is about 40 feet west of A. He testifies that he then went over to the frogs near A, and examined those on No. 2, to see whether they were in good order; saw what one of his workmen, named Stahl, was doing, who was working a few feet east of the crossing at the switches A, and who was about opposite the plaintiff on the other side of the track. He then walked down between tracks 1 and 2 a space of about 7½ feet wide, and spoke to a workman named Smith; then walked beyond him about 50 or 60 feet, to speak to his men, who were loading iron on track 3; was going to step across track 2, and had just placed one foot over the rail, when he was struck by engine 449. He says that he was listening for a signal, heard no bell, had not looked back to see whether the engine was returning, paid no attention to it after he saw it move westerly, that when he was looking at Stahl he noticed the condition of the switches, and saw that the switch for · No. 1 was open and for No. 2 was closed. He says that the accident might have been six or seven minutes, or a little more than that, after he noticed the condition of the switch. He received very severe injuries. His leg was crushed; was necessarily amputated. The result of his other injuries is probably permanent. His earning capacity is pretty much destroyed, and, if he was entitled to a judgment in his favor, the injury justified the amount of the verdict.

It was apparent that the defendant was not in fault for not seeing and attempting to avoid him when he was upon the track, for he had only placed one foot over the rail when. he was struck. When the evidence was closed, the two points upon which the plaintiff relied in order to establish the negligence of the defendant, were an unusual rate of speed of the engine after it passed upon track No. 2, or that it proceeded without ringing the bell. The state of the evidence required that the question of negligence should be submitted to the jury, which the trial judge did substantially as follows:

"The testimony is so clear that the engine came, and, track No. 2 being open, proceeded, as it customarily did, that it seems to me the only matter which requires your serious consideration upon this branch of the case is whether the engine, after it passed upon track No. 2, proceeded at an undue rate of speed, or proceeded without ringing the bell. In the first place, what was the customary rate of speed, and what was the practice in respect to ringing the bell? I shall not dwell upon the evidence. It has been suggested—and the suggestion is entitled to consideration—that all the men in charge of this engine testify that the bell was being rung, and that the engine was moving at a very moderate rate of speed, and it is competent for you to infer from their conduct of the engine as they would have us believe it was upon this occasion, and the other testimony in the case, what the ordinary practice was. If you find that their testimony is not reliable, that they were not in observance of the ordinary practice, that they were running the engine at an unusual rate

of speed, and were not ringing the bell, then you can find the plaintiff has established his case, so far as it rests upon the negligence of the defendant. If, on the other hand, you find that on this occasion the defendant, through its employés, observed the precautions which were usually adopted, running the engine at the usual rate of speed, ringing the bell, as they testify they did, then the plaintiff must fail, because he will not have succeeded in establishing that the defendant was guilty of negligence."

The verdict of the jury establishes the fact that they found the issue for the plaintiff.

The remaining vital question in the case is whether the conduct of the plaintiff so palpably showed contributory negligence that the judge should, in accordance with the request of the defendant, have taken the case from the jury. He did submit it to them under a charge manifestly in favor of the defendant, but permitting a verdict in favor of the plaintiff. His charge upon that subject was, in substance, as follows:

"Then we pass to the question of contributory negligence. And you are to bring the judgment and observation of intelligent men to the consideration of the particular circumstances of the case. If it is true that the plaintiff supposed that the switch on No. 2 was not open; if it is true that, going only the distance that he did,—190 or 200 feet,—he would have heard a signal made by the approaching engine to the switchman; if it is true that, not hearing this signal, believing the switch to be closed, and not hearing the ringing of the engine bell, because none was rung, he stepped upon the track,—you may find that that was not an act of negligence on his part, but that under the same circumstances a man of ordinary care and prudence would have done the same thing. Yet you are not to lose sight of the consideration which has often been enforced by the courts, and is the law, that it is the duty of every person, when crossing a railroad track, or when approaching any perilous place, to exercise the faculties which his Creator has given him for his preservation and protection; to exercise all his faculties, including his eyes and ears. Were the circumstances in this case such as to justify a man, in the exercise of ordinary prudence, in not turning about to see whether the train was approaching? Were the circumstances such that he could rely upon hearing the approach of an engine?"

He also said that, if the plaintiff had turned about, and looked behind him, before stepping upon the track, he could have seen the approaching locomotive. If contributory negligence was established beyond question, it was so established by the testimony of the plaintiff in connection with the uncontroverted facts, and the case could not have been taken from the jury except upon the ground that, regarding his entire testimony as true, the facts as admitted by him permitted no escape from contributory negligence on his part. The uncontroverted facts were that the scene of the accident was a railroad yard, in which switching engines were constantly in operation; that the course of business for such engines upon tracks 1 and 2 was uniform, and well known by the plaintiff, who was in an important position, and thoroughly trained in the work of the yard, and who knew that when an engine went westward beyond the switches at A it must return upon track 2. His conduct was based, according to his testimony, upon the facts that he had seen that track No. 2 was closed, that until it was open no engine could reappear upon it, that he should hear a signal by bell telling that the engine had reappeared, and that he listened, as he walked, for that purpose. It is admitted that he did not otherwise watch for the

return of the engine, or look to see whether it was coming. The question, then, is, can a jury be permitted to say that his attempt to cross No. 2 was, in view of this state of facts, not an act of negligence, but justifiable as an act of ordinary prudence? The question of negligence is ordinarily one of fact, and, being such, is to be submitted to the jury for their ultimate determination. "The question of negligence is one of law for the court only where the facts are such that all reasonable men must draw the same conclusion from them; or, in other words, a case should not be withdrawn from the jury unless the conclusion follows, as a matter of law, that no recovery can be had upon any view which can be properly taken of the facts the evidence tends to establish." Gardner v. Railroad Co., 150 U. S. 349, 14 Sup. Ct. 140; Elliott v. Railway Co., 150 U. S. 245, 14 Sup. Ct. 85; Railroad Co. v. McDonald, 152 U. S. 262, 14 Sup. Ct. 619; and authorities there cited.

While there is no supremacy in the rights of owners of railroads operated by steam over the rights of individuals who are also lawfully using the same roadway, yet the dangers from this means of transportation are manifest, while its use has become a necessity, and it is therefore simply prudent for the passer-by to exercise the caution which experience has shown to be needful. An ordinary and almost instinctive exercise of that caution is an endeavor to determine by eyesight, rather than by surmise, whether danger is at hand. It has, therefore, become a requirement, as a general rule, that a person of mature years, and in the possession of his faculties, who is about to cross a railroad track over which steam engines are known to be in constant use, must necessarily use the precautions against danger which his eyes and ears and powers of observation provide. This is not a statutory rule, and there are probably cases in which such a compulsory regulation is not applicable, and in which other circumstances exist which control its reasonableness; as, for instance when the injured person, confused by the negligence of the railroad officers, has made a mistake in his means of remedy. Elliott v. Railway Co., supra. It is, however, in ordinary cases, a command of common prudence recognized by reasonable men, is reiterated by courts, and should not be frittered away by juries. The language of the supreme court, especially when directed to the duty of railroad employés to avoid carelessness in the crossing of tracks, has been clear and definite. Upon the general subject of carelessness by a foot passenger when called upon to cross a railroad track, Mr. Justice Field said in Railroad Co. v. Houston, 95 U. S. 697,—a case of injury which resulted in death,—as follows:

"The failure of the engineer to sound the whistle or ring the bell, if such were the fact, did not relieve the deceased from the necessity of taking ordinary precautions for her safety. Negligence of the company's employés in these particulars was no excuse for negligence on her part. She was bound to listen and to look, before attempting to cross the railroad track, in order to avoid an approaching train; and not to walk carelessly into the place of possible danger. Had she used her senses, she could not have failed both to hear and to see the train which was coming. If she omitted to use them, and walked thoughtlessly upon the track, she was guilty of culpable negligence, and so far contributed to her injuries as to deprive her of any right to complain of others."

To the same effect is Schofield v. Railway Co., 114 U. S. 615, 5 Sup. Ct. 1125. The duty of a railroad employé in a railroad yard to be attentive to the probable or usual movements of switching engines which are in constant use is commented upon in Aerkfetz v. Humphreys, 145 U. S. 418, 12 Sup. Ct. 835. That a railroad employé in railroad service is not to assume that the train is not approaching, or that a thing which he wants to do can be done in safety, is sharply considered in the Elliott Case, supra. It is true that, if there are degrees of negligence, the injured man in that case was guilty of more inexplicable negligence than the plaintiff, but it was negligence of the same kind, and the suggestions of Mr. Justice Brewer in delivering the opinion of the court are, therefore, of value:

"It thus appears that the deceased, an experienced railroad man, on a bright morning, and with nothing to obstruct his vision, starts along and across a railroad track, with which he was entirely familiar, with cars approaching, and only 25 or 30 feet away, and, before he gets across that track, is overtaken by those cars and killed. But one explanation of his conduct is possible, and that is that he went upon the track without looking to see whether any train was coming. Such omission has been again and again, both as to travelers on the highway and employés on the road, affirmed to be negligence. The track itself, as it seems necessary to iterate and reiterate, is itself a warning. It is a place of danger. It can never be assumed that cars are not approaching on a track, or that there is no danger therefrom. It may be, as is urged, that his motive was to assist in getting the hand car out of the way of the section moving on the siding. But, whatever his motive, the fact remains that he stepped on the track in front of an approaching train without looking, or taking any precautions for his own safety. This is not a case in which one, placed in a position of danger through the negligence of the company, confused by his surroundings, makes, perhaps, a mistake in choice as to the way of escape, and is caught in an accident; for here the deceased was in no danger. He was standing in a place of safety on the south of the main track. He went into a place of danger from a place of safety, and went in without taking the ordinary precautions imperatively required of all who place themselves in a similar position of danger."

These cases, and others in the federal courts (Railway Co. v. Moseley, 6 C. C. A. 641, 57 Fed. 921), emphasize the point that the belief on the part of the injured person that an accident is not going to occur because he does not suppose that a train is at hand, is not an adequate reason for neglect to take the natural means at his command to determine whether an accident is imminent, for the "track is a warning and a place of danger." In this case the accident happened on a fine, clear day, when there were no unusual circumstances to distract the attention of an experienced man, like the plaintiff. He knew the important fact that engine 449 must shortly return on track 2. He had glanced at the switches, and saw, or thought he saw, that the track was closed, walked eastward between the tracks Nos. 2 and 3, and turned to cross No. 2 in the belief or assumption that the engine was not coming, because he had heard no signal of its approach. He crossed when, if he had turned about and looked, he could have seen the approaching engine; and the cause of the injury was his violation of the duty of protecting himself against an obvious danger. The judgment is reversed, with costs, and the cause is remanded to the circuit court for a new trial.