REPUBLIC IRON & STEEL CO. et al. v. TOBIN.

(Circuit Court of Appeals, Eighth Circuit. September 4, 1908.)

No. 2,829.

MASTER AND SERVANT—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE.

Plaintiff had been employed for several months by defendant, a mining company which was engaged in stripping the ore bed; the earth being removed to a dump by means of two trains of cars. The tracks were in the form of a Y; one branch being the loading track and the other leading to the dump. It was the custom, known to plaintiff, for the loaded train to back to the end of the connecting or tail track and wait until the empty train had backed onto such track a sufficient distance to switch to the loading track, and then follow it out, taking the other track. At a time when the empty train had just passed from the tail track to the loading track plaintiff started to walk along the dump track, with his back toward the tail track, and was struck and injured by the loaded train, which was moving at a speed of 7 or 8 miles an hour. From the center of the track where he was walking plaintiff could have seen the approaching train for a distance of 400 feet, but he did not look after going upon the track. *Held*, that he was guilty of contributory negligence, which precluded a recovery for the injury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 706–708.]

In Error to the Circuit Court of the United States for the District of Minnesota.

Oscar Mitchell (Washburn, Bailey & Mitchell, on the brief), for plaintiffs in error.

Samuel Anderson, for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and W. H. MUNGER, District Judge.

W. H. MUNGER, District Judge. On January 31, 1907, plaintiff, while in the employ of the Republic Iron & Steel Company, one of the defendants, was run over by a train of cars operated by said defendant, thereby losing his right leg. The engineer of the train is a codefendant.

The defendant Republic Iron & Steel Company is a mining corporation, and at the time of plaintiff's injury was engaged in removing the earth from the surface of the mine above the ore beds. In this work a steam shovel was employed, which removed the earth from place and loaded it onto cars standing on what is denominated in the evidence as the "loading track." When the cars in the train were all loaded, the train would back down upon what is denominated the "tail track," and then from the tail track would push the cars onto and along the dump track to the unloading dump, something like a quarter to half a mile away. Two trains were used in doing the work. The loading track and the dump track were nearly parallel at the point where plaintiff received his injury, and about 30 feet apart. These two tracks were connected with the tail track by a switch, so that the tracks together nearly resembled the letter Y. The train which first reached the switch, usually the loaded one, would back down to the lower end of the tail track. The other train would then back down onto the

tail track, go out through the switch onto the track upon which it was to go, and the train at the lower end of the tail track would come out onto the track upon which it was to go. In this manner the two trains passed in going and returning from the loading place to the unloading dump. The tracks ran in an easterly and westerly direction. Some 8 or 10 feet south of the unloading or dump track was a water tank from which the water required by the steam shovel was supplied by means of a hose which ran from the water tank under the rails of the tracks to the shovel. As the shovel moved forward in its work, it was necessary from time to time to change the location of the hose under the rails. Plaintiff was engaged in changing the location of the hose when he was run over by a loaded train, going to the dump at a speed of from 7 to 10 miles an hour.

The act of negligence charged against the defendants is the failure to give the usual and customary signal of blowing the whistle by the train in passing from the tail track to the dump track. The evidence as to whether such signal was given may possibly be said to be conflicting, though there would be much reason in holding that its character is such that the rule respecting the relative weight of affirmative and negative testimony announced by this court in C. & N. W. Ry. Co. v. Andrews, 130 Fed. 65, 64 C. C. A. 399, should be applied. But we pass that question, because we think plaintiff, by his own testimony, established such contributory negligence as prevents his right to recover.

Plaintiff entered the employ of the defendant company about the 7th of May, 1906, as track foreman, and continued as such foreman until about the middle of November following, when his work changed to looking after the repair and oiling of the cars and supplying the steam shovel with water, in which work he had several men under him. He thus became perfectly familiar with the manner in which the work was conducted, and also all the surrounding conditions. He testifies that just before the injury he had supplied the steam shovel with water, went to the water tank, turned the water off, and with two of the workmen under him was pulling the hose out from under the rails for the purpose of changing its location. They were on the south side of the unloading track, when a joint in the hose caught on the north rail of the track. He went across the track to release the hose, and just before going across he looked up and down the track and did not see any train. After releasing the hose he turned toward the east and proceeded down the center of the track toward the dump, looking for a good place under the rails through which to run the hose. He proceeded but a few feet when one of his men hollered, and, turning around, he saw the train nearly onto him. He tried to jump from the track, and got about over the rail, when the car struck him on the side and threw him in such a manner that his right leg was run over. He says he did not know whether the loaded train was on the tail track or not; but he saw the train with the empty cars going to the shovel, and must have known that the loaded train would move out from the tail track immediately thereafter. He says he did not pay any attention to the moving of the trains; but his work at the water tank and

at the shovel was within a few feet of the place where he was injured, and the movement of the trains would be known by a casual observer. From the place where he was when he looked for the train he could only see toward the tail track from 150 to 175 feet, owing to an embankment and a slight curve in the track; but when in the center of the track between the rails, had he looked, he could have seen the train up to the switch, about 400 feet away. One of the trains passed the point where he was as often as once every 15 minutes during the day. When he went onto the track and released the hose he was facing across the track, and a side glance up toward the switch would have disclosed to him the approach of the train, yet knowing that from the point where he looked he could only see some 150 to 175 feet, and that as soon as he stepped into the center of the track his view could extend some 400 feet, he did not look the second time, but after releasing the hose deliberately turned with his back toward the west, the direction from which he must have known the train would come, knowing that it would follow immediately after the empty train which he saw moving up the shovel track, and started down the center of the track to look for a good place through which to draw the hose. This observation should more appropriately have been made from outside the rails.

As before stated, he had been at work there since about the 7th of May, was familiar with existing conditions, the frequency with which the trains passed back and forth, that, had he looked after going upon the track, he could have seen much farther along the track in the direction from which he must have known a train would shortly come. He must be held to have known that a railroad track was a place of danger, yet with all such knowledge he chose to go into such place of danger, stooped over, loosened the hose, then started down the track, with his back toward the approaching train, without taking any caution to observe the train, except, as before stated, at a point where his view was obstructed beyond 150 to 175 feet. Had he looked, as was his duty, after going upon the track, where his view was unobstructed for some 400 feet, and before starting to walk along the track, he would have seen the approaching train. But this he did not do, and such negligence on his part was a contributing and proximate cause of the injury, for which no recovery can be had. The facts bring the case clearly within the law as stated in Grand Trunk Ry. Co. v. Baird, 36 C. C. A. 574, 94 Fed. 946; Aerkfetz v. Humphreys, 145 U. S. 418, 12 Sup. Ct. 835, 36 L. Ed. 758; Elliott v. C., M. & St. P. Ry. Co., 150 U. S. 245, 14 Sup. Ct. 85, 37 L. Ed. 1068; Spaven v. Lake Shore & M. S. Ry. Co., 130 Mich. 579, 90 N. W. 325; Keefe v. C. & N. W. Ry. Co., 92 Iowa, 182, 60 N. W. 503, 54 Am. St. Rep. 542; Wabash R. Co. v. Skiles, 64 Ohio St. 458, 60 N. E. 576; Morris v. B. & M. Ry. Co., 184 Mass. 368, 68 N. E. 680; Carlson v. Cincinnati, S. & M. R. Co., 120 Mich. 481, 79 N. W. 688.

At the close of all of the evidence defendant requested the court to direct a verdict in its favor, which request was overruled, and an exception taken. This instruction should have been given.

The case is therefore reversed, with directions to grant a new trial.