# ELLIOTT *v.* CHICAGO, MILWAUKEE AND ST. PAUL RAILWAY COMPANY.

ERROR TO THE SUPREME COURT OF THE TERRITORY OF DAKOTA.

No. 71. Argued November 6, 7, 1893. — Decided November 20, 1893.

Though questions of negligence and contributory negligence are, ordinarily, questions of fact to be passed upon by a jury, yet, when the undisputed evidence is so conclusive that the court would be compelled to set aside a verdict returned in opposition to it, it may withdraw the case from the consideration of the jury, and direct a verdict.

This case was commenced in the District Court of Clay County, Dakota Territory, on August 31, 1886, by the plaintiff in error, Biddena Elliott, widow of John Elliott, deceased, against the railway company to recover damages on account of the death of John Elliott, alleged to have been caused by the negligence of the defendant and its employés.

The defendant answered, a trial was had at the September term, 1886, and the plaintiff recovered a verdict for seven thousand dollars. Judgment having been entered thereon, the defendant appealed to the Supreme Court of the Territory, which reversed the judgment and remanded the case for a new trial. 5 Dakota, 523.

The case was again tried, though apparently in the District Court of Minnehaha County, at the April term, 1889, upon the same evidence that was presented on the first trial. A verdict was directed in favor of the defendant, and judgment entered thereon. Plaintiff appealed to the Supreme Court, which, on May 31, 1889, affirmed the judgment. Thereupon a writ of error was sued out from this court.

*Mr. Melvin Grigsby* for plaintiff in error.

*Mr. Heman H. Field,* (with whom were *Mr. John W. Cary* and *Mr. Robert B. Tripp* on the brief,) for defendant in error.

MR. JUSTICE BREWER, after stating the case, delivered the opinion of the court.

The question in this case is as to the liability of the company for the death of John Elliott. The company made three defences. One, that it was guilty of no negligence; second, that if there were any negligence, it was that of a fellow-servant; and, third, that Elliott was guilty of contributory negligence. The Supreme Court of the Territory, in its opinion filed when the case was first in that court, considered the last two defences as sustained, and, because thereof, reversed the judgment in favor of the plaintiff. All of them have been presented and fully argued in this court, but as we consider the third sufficient, it is unnecessary to notice the first two. We are of opinion that the deceased was guilty of contributory negligence, such as to bar any recovery. It is true that questions of negligence and contributory negligence are, ordinarily, questions of fact to be passed upon by a jury; yet, when the undisputed evidence is so conclusive that the court would be compelled to set aside a verdict returned in opposition to it, it may withdraw the case from the consideration of the jury, and direct a verdict. *Railroad Co.* v. *Houston,* 95 U. S. 697; *Schofield* v. *Chicago, Milwaukee & St. Paul Railroad,* 114 U. S. 615; *Delaware, Lackawanna &c. Railroad Co.* v. *Converse,* 139 U. S. 469; *Aerkfetz* v. *Humphreys,* 145 U. S. 418.

What, then, are the facts concerning the accident? It took place at a station called Meckling, a hamlet of two or three houses, and of so little importance that at the time the company had no station agent there. The main track of the defendant's road ran eastward and westward in a straight line, and the ground was level. On the north side of this track was a siding, 728 feet in length from switch to switch, and distant from the main track at the maximum 16 feet. This

siding was the only extra track at the place. About 100 feet east from the west switch was the depot, on the south of the track, and some 10 feet therefrom. Two hundred feet east of. that was a small car house, 16 feet from the track. These were the only buildings on the depot grounds. No cars were standing on the track or siding. The day was clear, and there was nothing to prevent the deceased from seeing all that was going on. He was foreman of a section gang, and had been working on this track for 10 or more years. In expectation of a coming freight train, his men had placed their hand car on the siding. The train was due at 8.25 A.M., but was, perhaps, five or ten minutes late. It came from the west, and at this station made a double flying switch. This was accomplished by uncoupling the train at two places, thus breaking it into three sections. The first section, consisting of the engine and 18 cars, moved along the main track; but before the balance of the train reached the switch, (its speed having been checked by brakes,) that was turned so that two cars (constituting the second section, and under the control of a brakeman) passed on to the siding; the rear section, having been still further checked by brakes, the switch was reset, so that it passed on to the main track, following the first section. The rear section consisted of a flat car, a box car, a caboose, and an empty passenger coach, and was under the care of the conductor and one brakeman. As the second section was thrown by the flying switch on the siding, two of the men started to push the hand car towards the east, so as not to be struck by the approaching freight cars. The deceased, at the time the first section passed the car house, was standing some 16 feet west thereof, and four or five feet from the track, talking with one of his men. After a short conversation, the latter started towards the depot, while the deceased walked eastward along the track until he had passed a few feet beyond the car house, when he started hastily toward the siding. His attention had apparently been called by the approach of the two cars on the siding to the hand car, for he made some call to the men who were pushing that hand car. He crossed the main track diagonally, his face turned eastward. The rear

section, coming along from the west, struck and crushed him. This rear section, when it passed the depot, was moving slowly, not faster than a walk, as one of the witnesses testified. That it was moving quite slowly is evident from the fact that it came to a stop after two cars and the caboose had passed over the body of the deceased, and this though no especial effort was made to check them after the deceased had been struck, the conductor and brakeman on that section being unaware of the accident. When he started to cross the track this approaching section was not to exceed 25 or 30 feet from him.

It thus appears that the deceased, an experienced railroad man, on a bright morning, and with nothing to obstruct his vision, starts along and across a railroad track, with which he was entirely familiar, with cars approaching and only 25 or 30 feet away, and before he gets across that track is overtaken by those cars and killed. But one explanation of his conduct is possible, and that is, that he went upon the track without looking to see whether any train was coming. Such omission has been again and again, both as to travellers on the highway and employés on the road, affirmed to be negligence. The track itself, as it seems necessary to iterate and reiterate, is itself a warning. It is a place of danger. It can never be assumed that cars are not approaching on a track, or that there is no danger therefrom. It may be, as is urged, that his motive was to assist in getting the hand car out of the way of the section moving on the siding. But whatever his motive, the fact remains that he stepped on the track in front of an approaching train, without looking, or taking any precautions for his own safety.

This is not a case in which one, placed in a position of danger through the negligence of the company, confused by his surroundings, makes perhaps a mistake in choice as to the way of escape, and is caught in an accident. For here the deceased was in no danger. He was standing in a place of safety on the south of the main track. He went into a place of danger from a place of safety, and went in without taking the ordinary precautions imperatively required of all who place themselves in a similar position of danger.

The trial court was right in holding that he was guilty of contributory negligence. So, without considering the other questions presented in the record, the judgment will be affirmed.

As since the decision by the Supreme Court of the Territory that Territory has been admitted into the Union as the two States of North Dakota and South Dakota, and as the counties of the trial are in the State of South Dakota, the mandate will go to the Supreme Court of that State.

*Affirmed.*