### WALKER et al. v. KINNARE.

(Circuit Court of Appeals, Seventh Circuit. October 5. 1896.)

No. 296.

1. REFERENCE TO MASTER—CONSTRUCTION.

An order that claimant's petition, the answer thereto, and his replication "be, and the same are hereby, referred to" a master in chancery, "to take proof of the issues joined in said petition, answer, and replication, and to report the same to this court, with his conclusions thereon as to the amount of damages, if any, which" the claimant is entitled to recover under said issues, refers the whole case to the master, and not merely the question of damages.

2. FINDINGS BY MASTER—REVIEW.

The findings by a master upon a reference, by consent of the parties, are to be treated as presumably correct.

**3. ACCIDENT AT CROSSING—NEGLIGENCE.**

Defendant's violation of duty in failing to lower the bars at the crossing, or to have a flagman there present, is not ground for recovery against it on account of injuries to one who had full notice of the approaching train in time to avoid any injury therefrom.

**4. SAME—CONTRIBUTORY NEGLIGENCE.**

Deceased, coming from the north, reached the crossing, where there were a number of tracks, just as a train reached it from the west on the second track, and, in order to cross in front of it, turned, and ran southeasterly diagonally over the street and first two tracks, and in front of the engine. He then crossed the third track, and was killed by an engine on the fourth track, also coming from the west, a little behind the engine of the train. The engine's headlight was lighted, and its bell ringing, and the engineer reversed the engine on seeing deceased. It was quite dark at the time, a drizzling rain and snow falling, and deceased knew the locality and the frequency with which trains passed. *Held*, that his negligence contributed to his death.

Appeal from the Circuit Court of the United States for the Northern District of Illinois.

Bill by the Union Trust Company of New York against the Atchison, Topeka & Santa Fé Railroad Company to foreclose a mortgage. Aldace F. Walker and John J. McCook were appointed receivers in such proceeding, and thereafter Frank T. Kinnare, administrator of Joseph P. McMullen, deceased, filed an intervening petition to recover damages for the death of his intestate. From a decree in favor of said intervener, the receivers appeal. Reversed.

The Union Trust Company of New York, on the 23d day of December, 1893, filed its bill in the circuit court of the United States for the district of Kansas, against the Atchison, Topeka & Santa Fé Railroad Company, seeking foreclosure of a mortgage upon its railroad, and for the appointment of receivers, and on the same day receivers were appointed, pursuant to the prayer of the bill; the appellants being the survivors or successors of the appointees. The order of appointment directed the receivers, among other things, to pay all just and legal liabilities incurred by the said company in the transportation of freight and passengers, including damages for injuries to employés or other persons and to property, which have accrued, or upon which suit has been brought or was pending or judgment rendered, within twelve months last past. On December 26, 1893, an ancillary bill was filed in the circuit court of the United States for the Northern district of Illinois by the same complainant against the same defendant, and the same persons, by the last-named court, were appointed receivers of the property within that district. On the 16th day of December, 1893, and prior to the institution of either of such suits, Joseph P. McMullen came to his death while attempting to cross Main street, in the city of Chicago, in front of a moving engine, operated by the Atchison, Topeka & Santa Fé Railroad Company. On March 19, 1894, the appellee, as administrator of the estate of McMullen, filed his intervening petition in the ancillary suit mentioned, to recover damages, under the statute of the state of Illinois, on account of the death of McMullen. After answer and replication, the court below, on the 23d of July, 1894, upon motion of the solicitor for such administrator, and by consent of the solicitor for the receivers, ordered that the intervening petition, the answer of the receivers thereto, and the replication of the administrator "be, and the same are hereby, referred to E. B. Sherman, Esq., one of the masters in chancery of this court, to take proof on the issues joined in said petition, answer, and replication, and report the same to this court, with his conclusions thereon as to the amount of damages, if any, which the said administrator is entitled to recover under said issues."

On the 22d of December, 1894, the master reported the facts found by him and his conclusions, as follows:

"Facts: First. That from 31st street, in the city of Chicago, county of Cook, and state of Illinois, there runs northwesterly, to the south branch of the Chicago river, a street called 'Main Street'; that south of and near to the said Chicago river there is a railroad crossing at about right angles with Main street, at which crossing there are at least seven parallel tracks, some witnesses stating the number to be twelve; that on the 16th day of December, 1893, the two most northerly of said tracks were used by the Chicago & Alton Railroad Company, and the two tracks next on the south were used by the Illinois Central Railroad Company, and that south of its tracks were two other tracks used by the defendant railroad company, and there were gates both upon the north and the south side of said crossing, which were operated by a man in a tower situated at the northeast corner of said crossing and said Main street; that the part of the gate extending over the sidewalk west of Main street, and which, when lowered, extended west, was broken so that when the gates were lowered, a space of at least five or six feet upon the outer part of the sidewalk west of Main street was left unprotected by said gate; and that said gate had been in that condition for a long time previous to December 16, 1893. Second. That Joseph P. McMullen, deceased, who was about fifty-eight years of age, and a millwright and machinist by trade, had been for about four months before said 16th day of December, 1893, employed upon a gas plant then being erected on Main street north of said crossing; that during this time he had lived south of 31st street, and in going to and from his home to his work, and returning, he had daily passed to and fro on Main street, and crossed said tracks at the Main street crossing; that said McMullen was a strong and vigorous man, an expert at his business, and receiving from $4 to $4.50 per day. Third. That shortly after five o'clock in the afternoon of said 16th day of December, 1893, said McMullen, in going from his place of business to his home, approached the Main street crossing from the north, walking on the sidewalk west of Main street; that said street was sixty-six feet in width, of which eight feet on each side was occupied by the sidewalk; that the crossing and sidewalk across the tracks were planked in the same manner, so that there was no perceptible difference between the street and sidewalk so far as this crossing was concerned; that, at the time said McMullen was so approaching said crossing, an Illinois Central freight train, coming from the west, nearly reached the crossing, and was within a block thereof; that south of the said Illinois Central train, and separated from it by an intervening track, two engines of the defendant company, the one closely following the other, were backing down from the west, and, when near the Main street crossing, the defendant company's engine, in advance, was a little behind the engine of the Illinois Central train, and its speed a little greater; that said McMullen, at the time when he reached the crossing, saw the approaching Illinois Central train, but could not see the defendant company's engines beyond and south of said Illinois Central train; that neither said Illinois Central train nor said engines were, as they crossed Main street, running more than six miles an hour; that upon the end of the tender of defendant company's locomotive, which first approached the crossing, there was a headlight; that the bell on said locomotive had been ringing continuously for at least a mile west of said crossing, and was ringing when the engine approached, and while it was passing over the crossing; that the gate on the north side of the crossing had not been lowered when McMullen passed it, nor was the tower bell then ringing, but that the gate was lowered and the bell rung immediately thereafter, and before the Illinois Central train had passed over the crossing; that there was no flagman on duty at the time at the said crossing; that when said McMullen reached the crossing, upon the sidewalk west of Main street, the Illinois Central train was very close to the crossing; that said McMullen, in order to cross in front of said Illinois Central train, turned and ran to the southeast, diagonally across Main street and the Illinois Central tracks, and in front of its engine; that, continuing in the same general direction, he then passed the intervening track between the Illinois Central tracks, and that upon which defendant company's engines were passing, tender first, to the eastward, and, when about half the way across Main street, he ran in front of the tender of defendant company's engine, and was struck and killed by it, and his body carried to the eastward of Main

street about 15 or 20 feet before the engine could be stopped; that the engineer of defendant company's engine, which struck and killed said McMullen, applied the brake, and reversed his engine, as soon as he saw him; that, at the time this accident happened, it was quite dark; that a drizzling rain and snow was falling.

"Conclusions of law: First. That the said McMullen, being familiar with said crossing, must be presumed to have known that the said tracks were used by different railroads, and that several trains or engines might approach said crossing either from the same or opposite directions at the same time; that he was put upon inquiry as to whether there were not other trains or engines upon the tracks south of the Illinois Central, and which he was not able to see, and against which, if there, he ought to be on his guard. Second. That the employés in charge of the defendant company's engine took every reasonable precaution, and were not guilty of negligence in the premises. Third. That neither the fact that the gates were not lowered sooner, nor the fact that part of the gate protruding over the sidewalk was broken, leaving a vacant space over a part of the sidewalk, contributed in any manner to the death of said McMullen, since he saw the approaching Illinois Central train, and was fully advised of its approach and of its nearness. That the failure of the defendant company and others using said crossing to keep a flagman stationed there, to give warning of the approach of trains and engines along the railroad tracks, did not contribute to the accident which resulted in the death of said McMullen. That the master understands the law to be that any failure of defendant railroad company to comply with a statutory requirement or a city ordinance, or any negligence on its part, which violation or negligence did not contribute to the injury received by said McMullen, does not create a liability against the defendant railroad company or its receivers. Fourth. The master therefore finds that the said administrator is not entitled to recover as against said defendant railroad company, or its receivers, in any sum whatsoever."

To this report the intervener (appellee here) filed exceptions, as follows:

"Exceptions to facts found: First. For that the master has found 'that said McMullen, at the time when he reached the crossing, saw the approaching Illinois Central train,' whereas he should have found that he first saw said train when he reached the Illinois Central track, and when he was in the midst of impending danger. Second. For that the master has found 'that neither the Illinois Central train nor said engines were, as they crossed Main street, running more than six miles per hour,' whereas the master should have found that trains were going at least fifteen miles per hour. Third. For that the master has refused to find that the ordinance of Chicago in force on the 16th day of December, 1893, required a flagman at said crossing. (The fact is, the ordinance was produced and quoted, but master claimed it was not within his province to make any finding on 'question of ordinance or statute.') Fourth. For that the master has refused to find that the said railroad company did not at the time of said accident render such protection to the public by substituting a towerman in lieu of a flagman, as is contemplated by said ordinances. Fifth. For that the master has refused to find from the evidence that engineer of said Santa Fé locomotive saw McMullen, and reversed his engine just as he reached the west side of Main street.

"Exceptions to conclusions of law: First. That as to the first finding of law, 'that he was put upon inquiry as to whether there were or were not other trains or engines upon the tracks south of the Illinois Central, and which he was not able to see, and against which, if there, he ought to be on his guard,' intervener insists is not a proper conclusion of law or fact. The master should have found that, by reason of the gates being up and the absence of a flagman, McMullen was invited to cross said tracks; that, by rea-. son of the darkness then prevailing, he did not see said Illinois Central train or the Santa Fé engine until he was in imminent peril of his life. Under these circumstances, the intervener should have recovered for all injury or damages sustained. Second. That as to said second finding of law, 'that the employés in charge of defendant's engine took every reasonable precaution,' the master erred. He should have found that they were going at an unlawful rate of speed, especially in attempting to pass the Illinois Central freight

train at the crossing. Third. That as to the third finding of law the master erred in stating that the failure of the company to observe the necessary signal, and give the required warnings, did not contribute to the death of McMullen, since the latter saw and understood the nearness of the Illinois Central train, and, not so contributing to the said death, the said company is not liable. The master clearly erred, and should have found that McMullen was entitled to all the protection in the way of signals and notices required by statute or ordinance. That, in the absence of these, the burden of proof is on the Santa Fé Company to show that notwithstanding, if the required signals had been given by them, the said McMullen would, nevertheless, have been killed. This the said company has not shown. Fourth. That as to the fourth finding of law, that the said administrator is not entitled to recover as against said defendant railroad company, or its receivers, in any sum whatsoever, the master erred. He should have found that the said defendants were guilty of negligence per se, and that the said defendant company was guilty of gross carelessness and negligence. That said deceased used ordinary care, and that his administrator should recover damages," etc.

On the 26th of June, 1895, the court below entered an order sustaining the exceptions to the master's report, and found that the intervening petitioner was entitled to a decree for damages, and re-referred the cause to the master, to ascertain the amount of damages, and report to the court. In pursuance of that interlocutory order or decree, the master reported damages in the sum of $4,871.69, to which report exceptions were filed by the appellants here, which exceptions were overruled by the court below, which court, on the 2d day of December, 1895, entered decree in favor of the intervener for the damages reported, and directed the receivers to pay such amount out of funds in their hands arising from the administration of the estate of the Atchison, Topeka & Santa Fé Railroad Company, from which decree, upon proper assignments of error, the receivers appeal to this court.

Robert Dunlop and Eldon J. Cassoday, for appellants.
Jesse B. Barton and Oscar R. Zipf, for appellee.

Before WOODS, JENKINS, and SHOWALTER, Circuit Judges.

JENKINS, Circuit Judge, after this statement of the case, delivered the opinion of the court.

An objection, preliminary to the consideration of the merits of the cause, is raised by the appellee, to the effect that the original order of reference to the master did not require him to report any conclusions of his own, either of fact or of law, upon any other subject than that of the amount of damages. This objection seems to be for the first time raised in this court, and cannot be sustained. Upon the face of the order, we think it clear that it was the design of the court to refer the whole case to the master. It should be read as though it required the master to report the proofs to the court, with his conclusions thereon, and as to the amount of damages, if any, which the administrator was entitled to recover under the issue. Ordinarily, in equity, references are not made or evidence taken to ascertain the damages to which a party is entitled, until it has first been determined that he is entitled to recover at all. Here the master was directed to take proof upon the issues joined by the pleadings, and report such testimony to the court, with his conclusions thereon. If the word "conclusions" referred simply to the amount of damages, the word would have been expressed in the singular, and not in the plural. This construction of the order was the one adopted and acted upon by both parties, and by the court below. The record discloses that the appellee filed objections before the master to the proposed report, in-

sisting that, upon the merits of the case, he should have made other and different findings of fact, and other and different findings of law, and requested the master to report certain findings on questions of fact upon which he had made no findings at all; and before the court he insisted that the master erred in his findings of fact, and in his refusal to find upon the questions as requested. There was no objection then taken that the order did not authorize a finding by the master upon the merits of the case. If the order could be construed as is now contended, the court should have stricken out the findings by the master as unauthorized; but the court ordered that the exceptions be sustained. This action by the court is a clear recognition that the order it had made required the master to report his conclusions of fact and of law upon the merits of the case.

The findings by the master upon a reference by consent of the parties are to be treated as presumptively correct, and the burden is cast upon the excepting parties to show error in them. The report is not to be disregarded upon any light ground; but as Mr. Justice Field observes in Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, the findings of the master, like those of an independent tribunal, "are to be taken as presumptively correct, subject, indeed, to be reviewed under the reservation contained in the consent and order of the court, when there has been manifest error in the consideration given to the evidence, or in the application of the law, but not otherwise." And he further observes that the findings "should have been treated as so far correct and binding as not to be disturbed, unless clearly in conflict with the weight of the evidence upon which they were made."

A careful review of the evidence compels us to the conclusion that the findings of fact and of law by the master were correct, and should have been sustained. In reaching this conclusion, we assume as matter of fact that the railroad company was negligent in not seasonably causing the gates to be lowered at the crossing upon the approach of the Illinois Central train and of the engines of the Santa Fé road. We also assume that, when McMullen approached this crossing, the gates were up, and that no flagman was stationed there, to give warning of approaching engines or cars or of impending danger, and that this was an invitation to him to go upon the crossing, and an assurance to him that no danger was impending. All this, however, did not absolve McMullen from the duty of care proportioned to his surroundings and situation. The violation of duty by the company is not actionable, unless it be a proximate and promoting cause of the injury. The lowering of the bars, and the presence of a flagman properly discharging his duty, are to give notice of the approach of a train; but if McMullen had such notice otherwise and in season to avoid an injury, if he was fully apprised of what the flagman or the lowering of the gates would have told him, if he knew that the train was at hand and approaching so nearly to him that he could not safely cross the track in front of it, he was, in his attempt to cross in front of the approaching train, guilty of negligence, which contributed to the injury, and which would prevent a recovery of damages against the company. See Railroad Co. v. Fears, 53 Ill. 115; Rail-

road Co. v. Bell, 70 Ill. 102; Blount's Adm'x v. Railway Co., 22 U. S. App. 129, 9 C. C. A. 526, and 61 Fed. 375.

The facts touching the conduct of the deceased lie within narrow compass. At this crossing there were from seven to ten parallel tracks. The two most northerly of the tracks were used by the Chicago & Alton Railroad Company. The two tracks next to the south were used by the Illinois Central Railroad Company. The two tracks next south were used by the Atchison, Topeka & Santa Fé Railroad Company. McMullen was 58 years of age, a millwright and machinist by trade, and for 4 months prior to this accident had been familiar with this crossing, passing it twice every day. He was a strong and vigorous man, an expert in his business, and in full possession of all his faculties. The accident occurred at 5 o'clock in the afternoon of the 16th of December. McMullen was returning from his place of business to his home. The street was 66 feet in width, 8 feet on either side being occupied by the sidewalk, the whole crossing being planked so that there was no perceptible difference between the street and the sidewalk. An Illinois Central freight train was coming from the west, and had nearly reached the crossing when McMullen came upon it. On the south track of the Sante Fé road two engines were backing down from the west, one closely following the other. At a point near to Main street, the engine of the Santa Fé road, which was in advance, was a little behind the engine of the Illinois Central train, and its speed was a little greater; neither engine nor train moving at a greater speed than six miles an hour. Upon the end of the tender of the engine first approaching the crossing, there was a headlight, which was lighted, and the bell of the engine had been ringing continuously from the time the engine was a mile west of the crossing, when it approached, and while it was passing over the crossing. The gate was lowered and the tower bell rung immediately after McMullen passed upon the crossing, and before the Illinois Central train had reached it. McMullen, as the master finds, in order to cross in front of the Illinois Central train, turned and ran to the southeast diagonally across Main street and the Illinois Central tracks, and in front of the coming train. After passing the Illinois Central tracks, he continued in the same general direction, crossing the north track of the Atchison, Topeka & Santa Fé Railroad Company, and undertook to cross the track upon which these engines were coming, and was struck by the coming engine, and killed. The engineer, so soon as he saw McMullen, applied the brake, and reversed his engine. It was quite dark at the time of the accident, a drizzling rain and snow falling. We cannot regard the conduct of McMullen under the circumstances otherwise than as reckless and inexcusable. He knew that the Illinois Central train was near to that crossing. This is made manifest by the direction which he took to pass in front of it. He was in a dangerous place, with which he was familiar. He knew that trains and engines were constantly passing and repassing there. His duty was that of active watchfulness. He sought to avoid a minute of delay by crossing the track upon a run in front of the coming train. In this he succeeded; but the duty was still resting upon him to watch for trains or en-

gines upon the six or eight tracks south of the Illinois Central track. He should have looked before putting foot upon the tracks of the Santa Fé road. If he had stopped upon the north track of that company's road, and had then looked, he would have seen the approaching engine almost directly in front of him. He could readily have stopped upon the north track of the Santa Fé road, and have avoided the danger. As before, with respect to the Illinois Central train, so now, with respect to the engine of the Santa Fé Company, he chose to take the risk of running across the track in advance of the engine. He either did not look to see, or, seeing, took the risk of crossing in advance of the engine. In either case his conduct was negligent and efficient to cause his death.

We cannot sustain the contention of the appellee that McMullen was lured into a position of sudden danger by the negligence of the company, and that, therefore, he was not chargeable with negligence, but with mere error of judgment in an emergency in which he was placed by the wrong of another. He was in no situation of danger when he saw the Illinois Central train approaching. He was in a safe position. All that he had to do was to stand still until the train had passed. He preferred to take the chance of crossing this network of tracks in front of a coming train. To uphold such conduct would absolve the public from all duty of care at railway crossings, and give sanction to recklessness.

The order of the court of primary administration directs the payment of such claims as the present one as a preferred claim. The record does not give the order appointing these receivers made in the court below. We assume, therefore, for this purpose, that, being entered in an ancillary suit, it was couched in the same language as the order of the court of primary jurisdiction. The conclusion which we have reached upon the merits renders it unnecessary to give expression to any opinion upon the question whether such claims as the present one can in any just sense be preferred to the mortgage debt of a railroad company. We comment upon the terms of the order merely to observe that this court must not be deemed, sub silentio, to approve the terms of the order. We reserve our opinion upon that matter until the question shall properly be brought to our attention.

The judgment will be reversed, and the cause remanded, with directions to the court below to enter a decree in favor of the appellants, overruling the exceptions to the master's report upon the facts, and dismissing the intervening petition of the appellee upon the merits.