### STOWELL v. ERIE R. CO.

(Circuit Court of Appeals, Second Circuit. December 7, 1899.)

#### No. 64.

RAILROADS—INJURY OF PERSON AT CROSSING—CONTRIBUTORY NEGLIGENCE.

Plaintiff drove upon the crossing of a double-track railroad, immediately behind a train passing on the track nearest to her, and was struck and injured by a train on the other track, approaching from the opposite direction. Such train was in plain view from the crossing, and the approach thereto on the highway, for more than a mile before it reached the crossing, except for the temporary obstruction of such view by the train which had just passed. *Held*, that plaintiff was guilty of negligence in failing to wait until such obstruction had passed, and then looking before attempting to cross, which precluded her recovery.

In Error to the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon a writ of error to review a judgment of the circuit court, Southern district of New York, entered upon a ver-

dict directed for the defendant in error, which was defendant below. The facts sufficiently appear in the opinion, the action being for personal injuries sustained from collision with a moving train.

Raphael J. Moses, for plaintiff in error.

F. B. Jennings, for defendant in error.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. On July 9, 1896, about 2 p. m., the plaintiff was driving a horse attached to a small phaeton along Englewood avenue, Englewood, N. J., proceeding southeasterly, so as to cross the tracks of the Northern Railroad of New Jersey, which road defendant conceded, for the purpose of the trial, that it was operating on that day. The crossing was at grade, some 1,500 feet from Englewood station, and 6,400 feet from Nordhoff station; and, approaching it as she did, she would first encounter the track for south-bound trains, going from Englewood to Nordhoff. A civil engineer was produced by the plaintiff, who had made careful observations and measurements, and plotted down the results thereof on a blue print, which was put in evidence. It appeared from his testimony that a person approaching this crossing as did the plaintiff would have an unobstructed view northwards towards Englewood station 565 feet, when within 18 feet of the west or south-bound track, and at 12 feet from said track could see in that direction 1,465 feet. The view towards the right hand as one approached was much more extended. The witness testified:

"The view which I have down the track towards Nordhoff as I approach the track on Englewood avenue, going east, is towards Nordhoff. You can see to Nordhoff station. That is 6,400 feet. I have a view of the entire track all the way for a mile or more. I have that view for 100 feet back from the track on Englewood avenue. I did not try the view further back, but I know there is nothing in the way for a hundred feet at least. Further back they may see at least a mile down the track. For 200 feet away from the track it is an entirely clear and unobstructed view; and from that point up to the track, and crossing the track."

It further appears from the blue print that at 25 feet west of the west track there is an unobstructed view in the direction of Nordhoff and beyond for 9,600 feet.

The situation as the plaintiff drew near the crossing was this: On the south-bound track there was a train due to leave Englewood at 2:06 p. m., and due at Nordhoff at 2:10 p. m. On the north-bound track there was a train due to leave Nordhoff at 2:06 p. m., and due at Englewood at 2:09 p. m. The speed of the first between stations was 33 feet per second. The speed of the other between stations was 44 feet per second. At this speed, if on time, they would encounter each other in about 1 minute and 42 seconds at a point 1,912 feet south of the Englewood crossing. The running time of both trains after getting under way from the station, was, of course, higher,—possibly 30 and 40 miles an hour, respectively. There is no direct evidence in the case that either train was behind time. The conductor of the north-bound train expressly testified that he left Nordhoff on time, and was running according to the time-table; the

accident delayed him some ten minutes. No one testified as to whether the south-bound train was on time or not, but in view of the fact that plaintiff, starting just as it passed her, had barely reached the east track when she encountered the north-bound train, it would seem that the south-bound train was about 15 to 20 seconds late. As to whether there was any failure to sound bell or whistle on the colliding train the testimony is very unsatisfactory, but, as the cause was disposed of below upon the question of plaintiff's own negligence, it will not be necessary to discuss such testimony.

The transactions which led up to the accident, according to plaintiff's own narrative, in which she is corroborated by the other witnesses, were as follows: She was driving towards the crossing on a slow trot, when she heard the noise of a train. It was a puffing sound, such as it would naturally have in starting. She stopped and waited to see where it was coming from, and looked both up and down the track, soon perceiving that the noise was from the south-bound train, which came in sight. The place where she stopped, as she estimated, and one of her witnesses corroborated her, was about 25 feet west of the west track. From this point, at the time she looked, the south-bound train having just left Englewood station, the north-bound train must have been in plain view, leaving Nordhoff station, but she seems not to have noticed it. Probably the train whose noise she heard, and which was close at hand, more particularly challenged her attention. The plaintiff was entirely familiar with the crossing and its surroundings. She waited where she had stopped until the south-bound train was just clearing the flagging (planking) laid between the rails for a roadway, and then started up the horse because she was in a hurry. She heard no signal whistle or bell, nor any noise of another approaching train; the noise of the down train being, as she testified, sufficient to drown any such sound from the up train. She started the horse as soon as the south-bound train had passed,—whether at a trot or a walk, she could not say. Before starting him she again looked up and down, seeing nothing except the disappearing south-bound train, which, of course, obscured temporarily the north-bound track from the crossing south towards Nordhoff. Proceeding on towards the north-bound track, plaintiff suddenly became aware of the proximity of the north-bound train, quite close to her; hearing its danger signal "just after the other train." Her horse was then on the track, but by the exertion of all her strength she pulled him around, away from the train; and he was struck, not by the engine, but by the second car.

This case is so closely parallel to Railway Co. v. Cobleigh, decided by this court (24 C. C. A. 342, 78 Fed. 784), that it seems unnecessary to cite any other authorities. In that case we referred to an earlier decision (Railroad Co. v. Blessing, 14 C. C. A. 396, 67 Fed. 277), and quoted the rule therein set forth, that a person who is about to cross a railroad track is bound to listen and look in order to avoid danger; and if he fails to do so, or if, doing so, and seeing the danger, he persists in the attempt, he is guilty of negligence that will defeat any recovery if he is injured. Cobleigh stopped his team while some distance from the track, and did look and listen, but a bluster of snow

coming directly in his face blinded his view. Thereupon he proceeded without any further attempt to discover whether he could cross the track without danger, and was struck by the train. The snow flurry was but a temporary obstruction, and we held that a person about to cross a railroad track "does not relieve himself from the imputation of negligence by looking when he cannot see, and omitting to look again when he could see and avoid danger." In the case at bar, when the plaintiff first looked towards Nordhoff the north-bound train must have been in full view, hauling out of the station; but there is some suggestion in the evidence that the sun would interfere with a long-distance view in that direction, wherefore her failure to see it might not by itself constitute negligence. When she looked in the direction of Nordhoff the second time, however, she saw distinctly that the track on which peril was to be anticipated was obscured from her vision by the train which had just passed her. What was hidden behind it she could not see, nor, in view of the noise made by the train passing nearer to her, could she hear. It was plainly apparent to her, also, that the passing train was going at a good rate of speed, and that as it moved along it would clear the view of the north-bound track. The obstruction to her view was of the most fleeting character. The two trains were proceeding at a combined speed of 100 feet a second, as the evidence gives it. A delay of the very briefest would have left her in a position where she could see far enough towards Nordhoff to determine whether the track was free for her to cross. She chose not to wait, however,—she "was in a hurry,"—and started the moment the rear car of the south-bound train passed her, and so drove right into the danger, which she must inevitably have seen had she looked when she ought to. We have here a case in which, as it seems to us, all reasonable men, unless swayed by sympathy or biased in some way, must draw the same conclusion from the admitted facts. This is the test laid down by the authorities. Gardner v. Railroad Co., 150 U. S. 349, 14 Sup. Ct. 140, 37 L. Ed. 1107; Elliott v. Railroad Co., 150 U. S. 245, 14 Sup. Ct. 85, 37 L. Ed. 1068; Railway Co. v. McDonald, 152 U. S. 262, 14 Sup. Ct. 619, 38 L. Ed. 434. In Railroad Co. v. Houston, 95 U. S. 697, 24 L. Ed. 542, Mr. Justice Field, writing the opinion, says:

"She was bound to listen and to look before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into the place of possible danger. Had she used her senses, she could not have failed both to hear and to see the train which was coming. If she omitted to use them, and walked thoughtlessly upon the track, she was guilty of culpable negligence, and so far contributed to her injuries as to deprive her of any right to complain of others."

See, also, Schofield v. Railroad Co., 114 U. S. 615, 5 Sup. Ct. 1125, 29 L. Ed. 224.

It is certainly no extension of this principle to hold that listening and looking at what is known to be but a temporary obstruction, when a delay of a few seconds will give one an unobstructed view, is not a proper and sufficient use of the senses under such circumstances. This question was recently before us in Railroad Co. v. Baird, 36

C. C. A. 574, 94 Fed. 946. The following excerpt from the opinion in that case is appropriate to the one at bar:

"While there is no supremacy in the rights of owners of railroads operated by steam over the rights of individuals who are also lawfully using the same roadway, yet the dangers from this means of transportation are manifest, while its use has become a necessity, and it is therefore simply prudent for the passer-by to exercise the caution which experience has shown to be needful. An ordinary and almost instinctive exercise of that caution is an endeavor to determine by eyesight, rather than by surmise, whether danger is at hand. It has therefore become a requirement, as a general rule, that a person of mature years and in the possession of his faculties, who is about to cross a railroad track over which steam engines are known to be in constant use, must necessarily use the precautions against danger which his eyes and ears and powers of observation provide. This is not a statutory rule, and there are probably cases in which such a compulsory regulation is not applicable, and in which other circumstances exist which control its reasonableness,—as, for instance, when the injured person, confused by the negligence of the railroad officers, has made a mistake in his means of remedy. Elliott v. Railroad Co., supra. It is, however, in ordinary cases, a command of common prudence recognized by reasonable men, is reiterated by courts, and should not be frittered away by juries."

Similar conduct has been condemned as negligent by the courts of the state in which this accident happened. In Railroad Co. v. Ewan, 55 N. J. Law, 574, 27 Atl. 1064, the court says:

"It is apparent that the plaintiff, without any reason for haste, went upon the track when it was evident to him that he could neither see nor hear any train which he was aware might be approaching, and when the causes of his inability to see and hear were so fleeting that in a few seconds they would have gone. It seems indisputable that such conduct was negligent. In the exercise of reasonable prudence, a man could not expose his life to a peril which he knew might be imminent, if a delay of a few minutes would assure him of safety, unless impelled by some motive of extreme urgency."

To the same effect are Railroad Co. v. Pfuelb, 60 N. J. Law, 278, 37 Atl. 1100; Railroad Co. v. Smalley, 61 N. J. Law, 277, 39 Atl. 695.

The suggestion upon the argument that plaintiff did not suppose that any train was coming on the north-bound track, because the two trains, when both were sharp on time, passed each other some 2,000 feet further south, is immaterial. The authorities above cited abundantly sustain the proposition that "the track itself is a warning and a place of danger." The judgment of the circuit court is affirmed.