GUILD et al. v. PRINGLE.

(Circuit Court of Appeals, Fourth Circuit.   May 1, 1906.)

No. 629.

1. TRIAL—DIRECTION OF VERDICT.

A verdict should be directed only where the testimony and all the inferences which the jury could justifiably draw therefrom would be insufficient to support a different verdict.

[Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trial, §§ 338–340, 376–380.]

2. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

The question of contributory negligence is a question of fact for the jury, except when all the material facts touching the negligence of the person injured are undisputed, and admit of no rational inference but that of his negligence.

[Ed. Note.—For cases in point, see vol. 37, Cent. Dig. Negligence §§ 274, 286.]

3. MUNICIPAL CORPORATIONS—INJURIES FROM DEFECTS IN STREETS—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Where, in an action against a municipal contractor for the death of a pedestrian by falling into an excavation in a street, the testimony was conflicting as to whether there was a light burning at the point of the excavation at the time, and concerning the extent of deceased's knowledge of the excavation, the refusal of an instruction that deceased was guilty of such contributory negligence in failing to observe and avoid the hole as prevented plaintiff's recovery was proper.

4. SAME—EVIDENCE.

Where, in an action against a municipal contractor for the death of a pedestrian by falling into an. excavation in a street, the city was not a party, and no attempt was made to charge it as a joint tort-feasor, evidence of the chairman of the city street committee as to the construction placed on a city ordinance respecting the use of covering, etc., at excavations in the streets was inadmissible.

In Error to the Circuit Court of the United States for the District of South Carolina, at Charleston.

See 118 Fed. 655.

R. W. Shand, for plaintiff in error.

D. W. Robinson, for defendant in error.

Before PRITCHARD, Circuit Judge, and PURNELL and WADDILL, District Judges.

PURNELL, District Judge. Maria H. Pringle, administratrix of Robert S. Pringle, deceased, brought suit for the recovery of $50,000 damages for injuries resulting in the death of her husband, Robert S. Pringle. The defendants, Guild & Co., were engaged, under contract with the city of Columbia, in constructing a sewerage system in the year 1902, and on the 4th day of August had a considerable line of excavation open along Indigo street. This excavation was about 4 feet in width, and from 12 to 16 feet in depth, and extended for a continuous line along said street 500 feet east and west, about 1,000 feet in all. Along the side of the excavation there was an embankment, formed by the earth taken therefrom, from 6 to 9 feet in height. The only breaks in this ditch and embankment were in front of a stable beyond Pringle's house west, and at the point where the same crosses the main line and side track of the A. C. L. Railway. At this point the ditch was tunneled under the railroad tracks, and there was an opening in the embankment for about 25 feet. This opening at the railroad tracks was the only place at which people walking could cross from the north to the south side of Indigo street, except by going east to Gates street or west to the point in front of the stables. The plaintiff's intestate in going to and from his home to the church, on the evening of August 4th, when the accident happened, passed by the excavation between the railroad tracks. The railroad tracks and the space between them leading into Indigo street, across the hole where the accident happened, were much traveled at the time this excavation and hole was left there, and the hole itself was directly in the way used for a walkway. In the middle of the break or excavation, and immediately in the space used between said railroad tracks for a walkway, a hole was dug into the tunnel which had been made under the tracks, which hole was left smooth at the top, and the dirt removed to the embankment on the outside of the railroad tracks. This hole was 4 by 5 feet at the surface and 14 feet in depth. The excavation and embankment rendered the street impassable for crossing purposes, except at the point indicated. The sidewalk east of the hole on the south side of Indigo street and of the embankment was not fit for use. This hole in the middle of the break between the railroad tracks had been dug and left open for several days before the accident. There was an electric street light situated at a distance of about 87 feet from the hole, but this cast a shadow across the hole, obscuring the hole, or making it look like a depression or mudhole. It was admitted that there was no covering or protection at the hole, except a red lantern, which the defend-

ants claimed to have there. The plaintiff offered a number of witnesses who testified that there was no lantern at this hole at which the accident happened at various times during the evening, and just a few moments before .the accident. On this there was conflicting testimony. The defendant offered witnesses to prove that there was a light there on the evening of the accident, but a number of these are contradicted, and some of them did not pretend to say there was a light. There was conflicting testimony on this material fact. Plaintiff's intestate usually went to and from his duties in a buggy, did not walk by this hole or excavation, but knew it was there, and had passed by it, as to how many times there is conflicting testimony. At the close of plaintiff's testimony, and again at the close of all the testimony, defendant asked the court to direct the jury to return a verdict for defendant, which request was refused, and, as stated in the record, "with leave to counsel to note an exception." This is not in the prescribed form, but, as no point is made on the form of the record, it is passed by without comment. The jury returned a verdict against the defendants for $15,000, which was adjudged to be excessive, and an order entered setting aside the verdict "unless the plaintiff shall within thirty days from the date hereof file with the clerk of this court a writing remitting and releasing all of said verdict in excess of eight thousand ($8,000) dollars." Plaintiff made the required remitter, and judgment was entered for the reduced amount.

The first two exceptions are to the refusal of the trial judge to direct a verdict at the close of· plaintiff's testimony, and again at the close of all the testimony. The rule of the courts of the United States on the subject of directing a verdict is again stated in McGuire v. Blount, 199 U. S. 148, 26 Sup. Ct. 1:

"No rule is better established in this court than that which permits a presiding judge to direct a verdict in favor of one of the parties where the testimony and all the inferences which the jury could justifiably draw therefrom would be insufficient to support a different verdict.. It is clear that, when· the court would be bound to set aside a verdict for want of testimony to support it. it may direct a finding in the first instance, and not wait the enforcement of its view by granting a new trial. Elliott v. Chicago, M. & St. P. Ry. Co.. 150 U. S. 245, 14 Sup. Ct. 85, 37 L. Ed. 1068; Union Pacific Ry. Co. v. McDonald, 152 U. S.·262, 14 Sup. Ct. 619, 38 L. Ed. 434; Anderson County Com'rs v. Beal, 113 U. S. 227, 5 Sup. Ct. 433, 28 L. Ed. 966; Delaware, L. & W. R. R. v. Converse, 139 U. S. 469, 11 Sup. Ct. 569, 35 L. Ed. 213."

Other authorities might be cited, but it is unnecessary. An examination of those above will show that in stating the rule of the words of Justice Day, who delivered the opinion cited, were well chosen. "Where the testimony and all the inferences which the jury could justifiably draw therefrom would be insufficient to support a different verdict. This must be so in the sound judicial opinion of the trial judge, who, as said in Supreme Lodge v. Beck, 181 U. S. 52, 21 Sup. Ct. 532, 45 L. Ed. 741, is primarily responsible for the just outcome of the trial; but cases are not to be lightly taken from the jury. From the record it appears there was conflicting testimony regarding several material, governing issues of fact, and even counsel in their briefs do not now state the facts alike; they disagree. The trial judge was not

satisfied or even of the opinion the testimony and all the inferences which the jury could justifiably draw therefrom were insufficient to support a different verdict from that rendered by the jury, except as to the amount of damages, and the verdict was reduced in accordance with the views of the court as to this at the instance of defendants. Therefore, there was no error in the court's refusal to direct a verdict, and this exception is overruled.

"(3) The court erred in refusing defendants' request to charge: 'The uncontradicted testimony in this case having shown that R. S. Pringle knew of the existence of the hole at which he met his accident, knew that it was dangerously deep, knew its exact locality, and knew at the time of the accident that he was at the crossing where this hole was, he was guilty of such contributory negligence in failing to observe and avoid it as prevents the plaintiff from recovering in this action, I therefore direct the jury to find a verdict for the defendants,' to which the defendants at the time duly excepted."

On the subject of contributory negligence, the court, among other instructions, gave the following, to wit:

"Was Mr. Pringle himself negligent? Did he show a want of ordinary care? Do you believe from the testimony that he knew the shaft was there? Was he familiar with the location, or were the conditions surrounding such as to put one who was exercising reasonable care on notice that the dangerous place was there? If so, could he have avoided it if he had exercised ordinary care? In other words, was the accident the result of the want of ordinary care on his part? This is an important matter, to be founded upon the facts as you may find them to be, and such proper inferences as you may draw from conditions existing at the time about the shaft. If you come to the conclusion that he was wanting in ordinary care, and for want of such care fell into the shaft, the plaintiff cannot recover, even if you conclude that the defendants were negligent. The law is absolute on this point; no one can hold another responsible for negligence if he himself did not use his senses, did not exercise ordinary care, and this failure was the immediate cause of the injury which is complained of. As more particularly applying to this case, I charge you the law as follows: If the conditions existing around and about the shaft were of such a character as to put passers-by on notice that the shaft was there, and of its dangers—in other words, if a person passing, by the use of his senses in the ordinary way could see the shaft—be warned that it was there—then the duty devolved on such person to use reasonable caution in avoiding it. If a person knew the shaft was there, was familiar with the location and surroundings, the law would impose upon such person the duty of avoiding it, if by the exercise of reasonable care he could do so. Upon this principle you will therefore consider what the conditions around and about the shaft were at the time. What, from the testimony, do you conclude? Was the shaft so situated that it would be seen by a passer-by who was using his ordinary sense of sight? And in this connection you should bear in mind the fact that this sewerage was going on, and that deep excavations had been made and were open along Indigo street, in which the shaft was located. You may consider other circumstances surrounding—you may consider the fact that there was an arc light there, and whether or not that was sufficient to show to persons the location of this place of danger. If it could be seen easily and readily by the use of sight, although it was dangerous, and although defendants may have been negligent, yet if a man approached it refusing to exercise his senses and to use the surrounding circumstances as notice, and take the warning which a man ordinarily would in the exercise of his reason, then the law says, if he stepped into it that way, and was hurt, the defendants would not be liable, because of the fact that the accident was the result of his own want of care, and not because of the negligence of the defendants."

Having properly decided that the testimony was such as not to warrant the court in taking the case from the jury and directing a verdict, the special instruction was not proper, and the charge of the court was all defendants at the trial nisi could ask.

Except when all the material facts touching the negligence of the person injured are undisputed, and admit of no rational inference but that of his negligence, the question of contributory negligence becomes a question of fact for the jury. This has been decided so often it is elementary. Among the recent decisions are N. P. R. Co. v. Amato (1881) 144 U. S. 465, 12 Sup. Ct. 740, 36 L. Ed. 596, syl. 6, cited in Alaska Treadwell Gold Mine Co. v. Whelan, 64 F. 466, 12 C. C. A. 225; Inland Seaboard Coasting Co. v. Tolson, 139 U. S. 557, 11 Sup. Ct. 653, 35 L. Ed. 270; Gleeson v. Midland R. Co., 140 U. S. 443, 11 Sup. Ct. 859, 35 L. Ed. 458; T. & P. Ry. Co. v. Volk, 151 U. S. 78, 14 Sup. Ct. 239, 38 L. Ed. 78; Railroad Co. v. Gentry, 163 U. S. 353, 16 Sup. Ct. 1104, 41 L. Ed. 186.

The fourth and final exception is to the refusal of the trial judge to allow the chairman of the street committee, and others to testify as to the construction placed upon a city ordinance as to placing covering, etc., at excavations in the streets. This presents a novel question, for which plaintiff in error cites no authority. That city officers can change the law as to negligence or contributory negligence by a construction given their own act is nova impressio. They might, under certain circumstances, make the municipal corporation jointly liable with the contractor, but could not exonerate the contractor. Under no rule of evidence was such testimony competent. The ordinances, or the construction thereof by the city officers, could neither enlarge. nor diminish the liability and responsibility of the contractors to the public for negligence in the prosecution of the work in which they were engaged. However, it might have rendered the city jointly liable, but the city was not a party, and the testimony was not offered with the view of proving its joint liability, making it a joint tort feasor. With the view it was offered, the testimony was incompetent, and was properly ruled out.

As the record presents the case, there was no error, and the judgment of the Circuit Court is affirmed. Affirmed.